**DISTRICT OF COLUMBIA, Appellant,**

v.

**Edwin E. FORSMAN and Susan M. Forsman, Appellees.**

**Edwin E. FORSMAN and Susan M. Forsman, Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**Nos. 88–455, 88–517.**

District of Columbia Court of Appeals.

Argued May 1, 1990.

Decided Oct. 4, 1990.

---

Martin B. White, Asst. Corp. · Counsel, with whom Herbert O. Reid, Sr., Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant and cross-appellee.

Edwin E. Forsman and Susan M. Forsman, pro se, appellees and cross-appellants.

Before BELSON, TERRY and FARRELL, Associate Judges.

BELSON, Associate Judge:

The District of Columbia appeals a judgment of $41,500 in favor of the Forsmans entered following a bench trial. At issue was the District's alleged negligence in failing to require an adjacent landowner to obtain a demolition permit prior to commencing the inadequate underpinning work that caused the collapse of the Forsmans' residence. The Forsmans have filed a cross-appeal. The dispositive issue on appeal is whether the public duty doctrine insulates the District of Columbia from liability for any negligence on its part. We conclude that the public duty doctrine forecloses the Forsmans' recovery of their losses against the District of Columbia. Consequently, we hold that the trial court erred in finding the District liable, and we reverse.

I.

The salient facts involved in this case are essentially undisputed. On December 10, 1981, the house the Forsmans were living in at 730 Columbia Road, N.W., in the District of Columbia,[1] collapsed during the course of underpinning[2] work conducted by a contractor hired by the Forsmans' neighbor, Reverend William Brock. Reverend Brock had planned an expansion of his church, The Old Pentecost Church, which required the demolition of 728 Columbia Road, N.W., next door to the Forsmans. Reverend Brock secured two building permits for the repair and addition on his church property but he neither applied for nor was issued a demolition permit to raze the building adjacent to the Forsmans' residence. He hired a contractor, John Watson, to do the demolition work. While monitoring the construction activities pursuant to the permit, James M. Minor, a District of Columbia Building Inspector, noted in September, 1981, that workers were preparing to raze the premises located at 728 Columbia Road. Minor also learned that no demolition permit was on file. When he called his supervisor at the Building Inspection Division of the Department of Consumer and Regulatory Affairs of the District of Columbia about the failure to obtain such a permit, Minor was told that none was required. Consequently, Reverend Brock was never required to obtain a demolition permit for the razing of the building at 728 Columbia Road. According to demolition permit regulations, liability insurance in the minimum amount of $100,000 for personal injury and $100,000 for property damage was a prerequisite to issuing a demolition permit. 12 DCMR § 109.7 (1986) (formerly 5A–1 DCCR § 109.7).

As a result of the initial demolition work in September or early October, 1981, the

---

1. The Forsmans did not own the house. They resided pursuant to an agreement with Mr. Forsman's godfather.

2. Underpinning is a construction technique which involves excavating beneath the walls of a building to remove the soil under a building's foundation, and then replacing the removed soil with supporting material such as reinforced concrete in order to strengthen and support the foundation of the building.

Forsmans' house was damaged in that so-called "pinholes" appeared where mortar between bricks had become dislodged due to the demolition activities next door. After Reverend Brock refused to repair the damage, the Forsmans contacted the District of Columbia Building Inspections Department in early October, 1981, in an effort to have the damage repaired. Inspector Minor, who was the District of Columbia official monitoring the repair and addition permits that Reverend Brock obtained in order to construct an addition to his church facilities, met with the Forsmans concerning the damage. Minor assured the Forsmans that the pinhole damage caused by Reverend Brock's work would be repaired. As a result of Minor's urging, Reverend Brock had the pinholes parged (covered with cement) to repair the damage caused by the demolition of 728 Columbia Road.

Reverend Brock dismissed Watson, the contractor, from his duties because of dissatisfaction with his services after most but not all of the demolition of 728 was completed. Then, Reverend Brock hired Vejar & Associates, Inc. ("Vejar") to complete the parging and commence the underpinning work to prepare for the construction of a subbasement. Inspector Minor explained to Vejar the proper way to complete underpinning which involved excavating beneath the Forsmans' house. Based on Minor's conversation with Vejar, Minor was satisfied that Vejar was familiar with proper underpinning techniques. Vejar presumably did not follow Inspector Minor's instructions, as the Forsmans' house collapsed on the afternoon that Vejar commenced the underpinning. Significantly, the trial court found that Inspector Minor had met with the Forsmans only two times before the building collapsed.[3] The record reveals the many difficulties the Forsmans have had in getting compensated for their losses. Reverend Brock settled with the

Forsmans for $25,000 in a previous law suit. Vejar was apparently uninsured and judgment proof. The Forsmans did not collect pursuant to the policy of insurance on the house on 730 Columbia Road, and they indicate that the period of limitations has since run on any such insurance claim. The Forsmans finally turned to the District of Columbia for compensation for their losses.

We will not detail the losses and damages asserted by the Forsmans. Suffice it to say that they sought substantial damages, based principally on the destruction of the only working model of a patented multi-media teaching machine that Mr. Forsman and his previous wife had invented. The trial court awarded them $66,500, against which it set off the amount of $25,000 paid them by the Reverend Brock, for a net amount of $41,500. The District noted a timely appeal, and the Forsmans cross-appealed, in part because they contend that the damages awarded them were insufficient.

## II.

For purposes of this appeal, the District of Columbia concedes that it was negligent in not requiring Reverend Brock to obtain a demolition permit for razing the house at 728 Columbia Road. It argues, however, that the public duty doctrine insulates it from any liability for the consequence of that negligence. The trial court ruled, to the contrary, that the District owed a duty to the Forsmans. The court also found that the Forsmans were "predictable victim[s]," and concluded that the demolition permit regulations protect not only the general public, but neighboring landowners in particular. An examination of our precedents regarding the public duty doctrine demonstrates how difficult it is to qualify for an exception from it. Our case law has deemed excepted one who is a member of a specifically protected class or one who has

---

**3.** Although we refer to 730 Columbia Rd., N.W. as the residence belonging to the Forsmans, the house actually belonged to Mr. Forsman's godfather, the late Mr. Charles D. Stinson. Mr. Stinson and Mr. Forsman apparently were partners with an agreement allowing the Forsmans

to live in the premises rent free in exchange for their services in renovating the premises, an arrangement that permitted the Forsmans to devote a considerable amount of time to refining a patented invention.

established a special relationship with an agent of the District of Columbia. *See Turner v. District of Columbia,* 532 A.2d 662 (D.C.1987). We have acknowledged "the fundamental principle that a government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen." *Warren v. District of Columbia,* 444 A.2d 1, 4 (D.C.1981) (en banc). "Under the public duty doctrine, a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public." *Klahr v. District of Columbia,* 576 A.2d 718 (D.C.1990). *Accord, Akins v. District of Columbia,* 526 A.2d 933, 935 (D.C.), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987); *Morgan v. District of Columbia,* 468 A.2d 1306, 1310–11 (D.C.1983) (en banc). As this court stated in *Turner, supra:*

> [T]here are at least two ways to demonstrate the existence of a "special relationship" between the city and the injured party which would justify reliance by the injured party on the city's representations. Such a relationship can be established either by "direct contact or continuing contact between the victim and the governmental agency or official," ... or by a statute that prescribes

"'mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole.'"

*Id.* at 667 (citations and footnote omitted).

■ Our review of the record in light of the case law leads us to disagree with the trial court's ruling, principally in reliance on *Turner,* that the District of Columbia owed a special duty to the Forsmans as members of a protected class and "predictable victims" of negligence by the District. First, the duty of the District of Columbia to enforce its regulations, including the demolition permit regulation at issue here, is normally a duty owed to the general public rather than a specific individual. Nothing in the applicable statute or regulations creates a special class of persons protected by the building code other than the general public. *See* D.C.Code § 5–1304 (1988 Repl.).[4] We do not deem the provision requiring liability insurance in connection with the issuance of a demolition permit to single out any particular category of persons for special protection against the risks that attend demolition work.[5] The absence of explicit language in the statute protecting the Forsmans as members of a particularized class readily distinguishes the instant case from *Turner, supra,* 532 A.2d at 675, where this court held that the Child Abuse Prevention Act[6] explicitly creates a special duty owed by the District to neglected or abused children once a child

---

4. Section 5–1304 provides:

> The Construction Codes shall be construed to secure their expressed intent, which is to ensure public safety, health, and welfare by building construction, through structured strength, energy and water conservation, accessibility to the physically handicapped, adequate egress facilities, sanitary equipment, light ventilation, and fire safety; and, in general, to secure safety to life and property from all hazards incident to the design, erection, repair, removal, demolition, or use and occupancy of buildings, structures, or premises.

Likewise, the D.C. Building Code, 12 DCMR (May 1986), containing the regulations on demolition permits, appears to protect public safety generally in accordance with the expressed intent of § 5–1304, *supra.*

5. This case differs in significant respects from *Brennan v. City of Eugene,* 285 Or. 401, 591 P.2d 719 (1979). There it was held that the city's issuance of a taxicab license while negligently

failing to assure that licensee had public liability insurance required by ordinance gave rise to a cause of action in a passenger injured by driver's negligence. The court distinguished a number of public duty doctrine cases on the ground that they dealt with "the failure on the part of public officials to act at all," whereas *Brennan* involved the actual issuance of the permit, albeit negligently. *Id.* at 407, 591 P.2d at 724. That distinction differentiates the instant case as well. Even more significantly, the *Brennan* court also voiced its agreement with authorities that hold that when a state abrogates statutorily the doctrine of sovereign immunity, as had Oregon, it also rejects the public duty doctrine. *Id.* at 407–08, 591 P.2d at 724–25. In view of those holdings, we do not view *Brennan* as authority for appellees' position here.

6. The court referred specifically to portions of the Act codified at D.C.Code §§ 6–2102, 2104, 2121, 2122, and 2124 (1981). *Turner, supra,* 532 A.2d at 667–68.

abuse report is filed with the government agency established by statute for the protection of this narrow class of children. We hold, as a matter of law, that the Forsmans, as residents of a building adjacent to a site at which demolition was taking place, do not come within a special protected class but instead are members of the general public protected by the demolition permit regulation. Thus, the Forsmans do not qualify for the exception to the public duty doctrine that we described in *Turner, supra.*[7] *See Platt v. District of Columbia,* 467 A.2d 149, 152 (D.C.1983); *Roberson v. District of Columbia,* 86 A.2d 536, 537 (D.C.1952) (District not liable for failure to enforce regulations to prevent loitering, congregating and playing on public sidewalk where plaintiff was injured when a wagon struck her from behind).

Similarly, the District of Columbia, through its agent Inspector Minor, did not through any direct or continuing contact enter into a special relationship with the Forsmans as to the enforcement of the demolition permit regulation sufficient to impose upon the District of Columbia a duty to protect the Forsmans from any harm emanating from the demolition work.[8] In *Platt v. District of Columbia, supra,* 467 A.2d at 152, we held that the District's act of permitting a club to remain open with an occupancy permit despite building and fire code violations created no special duty to club occupants injured in a fire at the club. We articulated a two-part test that a plaintiff must meet in order to convert a duty owed to the general public into a special duty: "(1) a direct contact or

continuing contact between the victim and the governmental agency or official; and (2) a justifiable reliance on the part of the victim." *Platt, supra,* 467 A.2d at 151 (citation omitted). *See also Morgan v. District of Columbia, supra,* 468 A.2d at 1319 (no affirmative undertaking by police captain to protect police officer's wife from her violent husband); *Warren v. District of Columbia, supra,* 444 A.2d at 3 (inadequate police investigation in response to rape victims' call to 911 insufficient to establish special relationship or justifiable reliance). Even though it could be argued (perhaps unsuccessfully) that Inspector Minor's assistance to the Forsmans in getting Reverend Brock to repair the pinhole damage from the demolition around October, 1981, was sufficient to create a special relationship with the Forsmans concerning the completion of the repairs of the pinholes, that relationship would not encompass the underpinning, an entirely different operation. The trial court found that Inspector Minor had only two meetings with the Forsmans prior to the collapse of their home. The trial court further observed in its oral findings that:

> the problem ... with the District's responsibility [is] that they had a dealing with him on ... primarily the parging responsibility, the pinhole responsibility and the question that somebody would go in under their land and somebody else was demolishing buildings without having the proper permit and all that never came up. They didn't know anything

7. *Halvorson v. Dahl,* 89 Wash.2d 673, 574 P.2d 1190 (Wash.1978), referred to by the trial court, is also readily distinguishable. In *Halvorson,* a widow, whose husband died in a hotel fire, sued owners of a hotel and the City of Seattle due to an alleged failure of Seattle officials to enforce building, housing, and safety codes. The court noted that the Seattle Housing Code *explicitly protected occupants* of buildings. *Id.* at 677 n. 1, 574 P.2d at 1192 n. 1. Accordingly, even if the traditional sovereign immunity rule still applied, the widow's deceased husband, as the occupant of a building when he perished in the fire, was a member of a specifically protected class warranting an exception to the application of the public duty doctrine. Unlike the Seattle Housing Code, the District of Columbia Build-

ing Code's demolition permit regulations were not enacted to specifically protect occupants of adjacent property.

8. For purposes of this appeal, we are assuming that the underpinning work in this case was within the scope of the demolition permit although there was no specific finding by the trial court to this effect. The evidence would permit, but not require, such a finding. Because of our holding regarding the public duty doctrine, there is no need to remand this case to the trial court for more specific findings of fact on the causal relationship between failure to require the demolition permit and financial loss resulting from collapse of the building.

about it. And there was no occasion for this inspector to discuss it with them.

Minor, therefore, did not develop a special relationship with the Forsmans in relation to Vejar's underpinning work. The mere fact that the inspector assisted the Forsmans in getting the parging repairs done could not have justified reliance by the Forsmans on Inspector Minor to protect them from any and all harm arising out of the demolition and construction project going on next door.

 We also note that the Forsmans do not claim that Minor negligently advised Vejar concerning proper underpinning techniques. Their essential claim is that the District negligently failed to require a demolition permit. We can discern no specific undertaking to protect the Forsmans in particular nor does the record permit the conclusion that the Forsmans justifiably relied on such an undertaking by the District. *See Akins v. District of Columbia, supra,* 526 A.2d at 935. Certainly an inspector's limited involvement in monitoring a construction or demolition site does not place a duty on the District to monitor such activities on that property continuously thereafter.

This leads us to observe that one consequence of the public duty doctrine is that the licensing and inspection obligations imposed on the District of Columbia for the benefit of the public do not make the District an insurer of the public against any negligent acts by private parties acting without the requisite permits. We also observe that in the course of their daily activities, D.C. building inspectors are likely to come into frequent contact with persons who live near construction or demolition sites; Inspector Minor testified that his department encourages inspectors to establish contact with neighbors concerning underpinning and other construction matters. The District of Columbia should be free to exercise its police power for the benefit of the general public without the fear that by making contact with citizens in the course of carrying out its responsibilities, the Dis-

trict may forfeit its immunity under the public duty doctrine, and expose itself to tort liability for any injury or damage incurred in the course of work subject to licensing or inspection by the District due to the negligence of the District's employees or agents. *See Morgan, supra,* 468 A.2d at 1311.

Accordingly, we reverse the ruling of the trial court. We also reject the Forsmans' claims on cross-appeal regarding damages and reverse and remand this case to the trial court so that judgment in favor of the District of Columbia may be entered.[9]

*Reversed.*

---

9. We have examined the other points made by appellees on this appeal and cross-appeal, and conclude that appellees were entitled to no relief in the trial court.