**Verdina POWELL, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 90–1016.**

District of Columbia Court of Appeals.

Argued Oct. 22, 1991.

Decided Feb. 14, 1992.

---

Richard S. Schrager, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom Charles L. Reischel, Deputy Corp. Counsel, was on the brief, for appellee.

Before ROGERS, Chief Judge, SCHWELB and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellant Verdina Powell seeks reversal of the judgment dismissing her lawsuit as barred by the public duty doctrine. We reverse, holding that the trial judge erred

by concluding that under the public duty doctrine the District of Columbia government could not be held liable in tort for the negligence of its employee in issuing the wrong automobile license tags and registration number for appellant's car since appellant sufficiently alleged a special duty as would bring her within the "special relationship" exception to the public duty doctrine.

## I

Appellant purchased a 1984 Ford Escort in April 1986, registered the car in the District of Columbia, and received D.C. license tags bearing the number 131–772. Thereafter, on December 6, 1986, she was stopped by an Anne Arundel County, Maryland police officer and her car was impounded when a computer check, through the Washington Area Law Enforcement System (WALES), incorrectly indicated that appellant's registration number belonged to another individual.[1] Based on these events, appellant sued the District of Columbia government (District), alleging that it negligently issued her a registration certificate and license plates that had previously been issued to Ms. Althea Hinds, and negligently entered her registration information into the WALES system. The trial judge granted the District's motion to dismiss the complaint on the grounds that the suit was barred by the public duty doctrine.

## II

Under the public duty doctrine:

[the District of Columbia] and its agents owe no duty to provide public services to particular citizens as individuals. Instead, absent some "special relationship" between the government and the individual, the District's duty is to provide public services to the public at large.

*Hines v. District of Columbia,* 580 A.2d 133, 136 (D.C.1990) (citing *Turner v. District of Columbia,* 532 A.2d 662 (D.C.1987); *Morgan v. District of Columbia,* 468 A.2d 1306 (D.C.1983) (en banc); *Platt v. District of Columbia,* 467 A.2d 149 (D.C.1983); *Warren v. District of Columbia,* 444 A.2d 1 (D.C.1981) (en banc)).

The purpose of the public duty doctrine is to shield the District and its employees from liability associated with providing "public services." *Hines v. District of Columbia, supra,* 580 A.2d at 136. As applied by the court, it has operated to bar lawsuits by a person seeking, as an individual, to enforce the duties to prevent crime and otherwise protect against injury in the absence of a special relationship which imposes a special legal duty. *Morgan v. District of Columbia, supra,* 468 A.2d at 1311 (police services); *Warren v. District of Columbia, supra,* 444 A.2d at 2–3 (same); *see also Hines v. District of Columbia, supra,* 580 A.2d at 136 (ambulance services); *Platt v. District of Columbia, supra,* 467 A.2d at 150 (building permits).

Originally, the sovereign immunity doctrine shielded state and local governments from all tort liability under the common law maxim: "the king can do no wrong." Note, *Municipal Liability for Negligent Inspection,* 23 Loy.L.Rev. 458, 459–460 (1977) (quoting *Russell v. The Men Dwelling in the County of Devon,* 100 Eng.Rep. 359 (K.B. 1788) ) [hereinafter Note, *Municipal Liability* ]. Realizing that the doctrine of sovereign immunity often led to unfair results, many jurisdictions either abolished the doctrine altogether, *id.* at 460 n. 14 (citing Wash.Rev.Code Ann. § 4.96.010 (West 1967)), or limited its applicability. *See* D.C.Code §§ 1–1201 et seq. (1987 Repl.);[2] *see also,* Prosser and Keaton on

---

1. The record is unclear about what caused this error. The parties' briefs, referring to a deposition that is not part of the record on appeal, state that a District of Columbia Bureau of Motor Vehicle Services representative thought that the error resulted when a computer operator mixed up the applications and numbers for appellant and Ms. Althea Hinds.

2. *E.g.,* D.C.Code § 1–1212 (1987 Repl.):
   Hereafter the District of Columbia shall not assert the defense of governmental immunity

in any suit at law in which a claim is asserted against it for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the District occurring as the result of the operation by such employee, within the scope of his office or employment, of a vehicle owned or controlled by the District: Provided, that in the case of a claim arising out of the operation of an emergency vehicle on

TORTS § 131, at 1044–1045, 1049 & 1052 (5th ed. 1984) [hereinafter PROSSER].

A number of jurisdictions, including the District of Columbia, now limit the circumstances under which governments can be sued by adopting one or more of three alternative approaches to avoiding liability. Note, *Municipal Liability, supra*, at 460, 463, 467; 57 AM.JUR.2D *Municipal, County, School, and State Tort Liability* §§ 104–144. All three approaches have existed at one time or another in the District of Columbia. Two of them continue the sovereign immunity doctrine's jurisdictional bar to bringing suit, but limit its applicability by dividing governmental activities into two categories: (1) governmental (immunity) and proprietary (no immunity) or (2) discretionary (immunity) and ministerial (no immunity). *See generally Spencer v. General Hospital*, 138 U.S.App.D.C. 48, 425 F.2d 479 (1969) (en banc). The third approach is the public duty doctrine, which focuses on "whether the municipality owes a duty to the injured person." Note, *Municipal Liability, supra*, at 467; *see* 57 AM.JUR.2D *Municipal, County, School, and State Tort Liability* § 139.

Initially, the courts in the District of Columbia applied the governmental/proprietary distinction in determining when sovereign immunity would bar a suit against the District, but gradually abandoned this in favor of the discretionary/ministerial approach. *See Spencer v. General Hospital, supra*, 138 U.S.App.D.C. at 52, 425 F.2d at 483, and cases cited therein.[3] It is now "settled that a District officer, and the District when sued for the acts of an officer under the theory of *respondeat superior*, are protected by sovereign immunity if the officer's acts are 'discretionary,' but subject to liability if the acts were 'ministerial' in character." *Rieser v. District of Columbia*, 183 U.S.App.D.C. 375, 388, 563 F.2d 462, 475 (1977); *accord District of Columbia v. North Wash. Neighbors*, 367 A.2d 143, 148 (D.C. 1976) (en banc) (noting that this distinction was influenced by similar distinctions under the Federal Tort Claims Act) (citing *Wade v. District of Columbia*, 310 A.2d 857, 860–61 (D.C.1973).

This court has adopted the public duty doctrine to limit the District's liability in negligence cases where sovereign immunity is not a bar to suit. This approach

---

an emergency run the District shall be liable only for gross negligence.

For other claims against the District, including those involving negligent or wrongful acts of employees, D.C.Code § 1–1202 authorizes:

The Mayor of the District of Columbia . . . to settle, in his [or her] discretion, claims and suits, either at law or in equity, against the District of Columbia. . . .

D.C.Code § 1–1202(1) also provides that "nothing herein contained shall be construed as depriving the District of Columbia of any defense it may have. . . ."

**3.** *Spencer v. General Hospital, supra*, involved a claim of negligent treatment at the hospital operated by the District. The court clarified its earlier rejections of the notion that the "classification of a function as 'governmental' ends, rather than begins, the inquiry into whether a tort action should be permitted to proceed against a public entity." *Id.* at 52, 425 F.2d at 483. The court drew a distinction between governmental functions "of such a nature as to pose threats to the quality and efficiency of the government in the District if liability in tort was *made* the consequence of [a] negligent act or omission," and those that did not. *Id.* at 51, 425 F.2d at 482. The former, the court determined,

involved "the performance of functions calling for the highest degrees of discretion and judgment," *id.*, and for those the District could not be held liable in tort. *Id.* Other functions, however, where the District employee was simply carrying out a program developed through the exercise of discretion and judgment, could result in liability of the District. *Id.* at 52, 425 F.2d at 483. Thus, the District was not at risk in tort liability for all of its actions, but only for those which were ministerial in nature. *See, e.g., Elgin v. District of Columbia*, 119 U.S.App.D.C. 116, 121, 337 F.2d 152, 157 (1964) (no bar to suit for injuries suffered by pupil as a result of failure by District to repair broken guardrails at public school playground; ministerial act involved).

In *Chandler v. District of Columbia*, 404 A.2d 964 (D.C.1979), the court applied the discretionary/ministerial distinction in determining that the District owed no duty of care in deciding to close a fire station. However, in *Hines v. District of Columbia, supra*, 580 A.2d 133, the court declined to apply the same distinction where District employees responded negligently to a request for ambulance services, observing that the distinction "related to a special form of sovereign immunity accorded the District as a municipality." *Id.* at 137.

originated from a principle of negligence which states that:

A duty may be general, and owing to everybody, or it may be particular, and owing to a single person only by reason of his peculiar position. Instances of the latter sort * * * [include] the duty of every person to so conduct his business as to avoid exposing others to injury. But a duty owing to everybody can never become the foundation of an action until some individual is placed in [a] position which gives him particular occasion to insist upon its performance; it then becomes a duty to him personally.

*Orzechowski v. State*, 485 A.2d 545, 549 n. 3 (R.I.1984) (quoting 3 COOLEY, LAW OF TORTS § 478 at 366 (4th ed. 1932)); *see also Warren v. District of Columbia*, 444 A.2d 1 (D.C.Super.Ct.1978) (Appended to *Warren v. District of Columbia*, 444 A.2d 1, 8 (D.C.1981)) (rebutting criticism of the tort principle that a duty owed to everyone implies a duty owed to no one).

From this general principle, Professor Cooley formulated the following rule for determining when a public official owes a duty:

[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to an individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. "The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the

public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance."

*Warren v. District of Columbia, supra*, 444 A.2d at 9 (citing 2 COOLEY, LAW OF TORTS § 300, at 385–86 (4th ed. 1932) (citation and footnotes omitted)) (Kelly, J., concurring in part and dissenting in part).

■■■ Thus, as with the governmental/proprietary and the discretionary/ministerial approaches to defining the scope of the District's immunity, the public duty doctrine also establishes a dichotomy for determining whether a claimant may sue the District. The public duty doctrine, however, is not based on sovereign immunity considerations, but rather on whether, even if the acts involved are ministerial in nature, an actionable duty exists. *Rieser v. District of Columbia, supra*, 183 U.S.App.D.C. at 390, 563 F.2d at 477. The District is subject to liability for injuries arising from the negligence of its employees only if the duty owed to the plaintiff was a special duty to that person as an individual or as a member of a class of persons to whom a special duty is owed; the District cannot be sued if the duty it owed was a general duty to the public-at-large.[4] *Klahr v. District of Columbia*, 576 A.2d 718, 719 (D.C.1990) ("Under the public duty doctrine, a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public."). Since the individual employee cannot be held personally liable for his or her duties to the general public, neither can the municipality under a *respondeat superior* theory since the employer is entitled to its

---

**4.** The terms "special relationship" and "special duty" may be used interchangeably. *See, e.g., Turner v. District of Columbia, supra*, 532 A.2d at 661–62, 668; *Platt v. District of Columbia, supra*, 467 A.2d at 151. However, we use the terms as stated in *Warren v. District of Columbia, supra*, 444 A.2d at 3: "a special relationship ... imposes a special legal duty...." *See also Morgan v. District of Columbia, supra*, 468 A.2d

at 1312 ("Although the police have no obligation to act at the behest of any one individual, once they begin to act on behalf of a particular citizen in such a way as to raise significantly the quotient of risk over and above the risks assumed by every other member of the community, additional responsibilities arise.") (citing *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167, 159 N.E. 896, 898 (1928)).

employee's defenses.[5] *Modlin v. City of Miami Beach*, 201 So.2d 70 (Fla.1967).

██ Although the court has not described all of the circumstances under which the public duty doctrine applies, the court has defined it broadly for purposes of limiting the District's substantive liability. *See, e.g., Hines v. District of Columbia, supra*, 580 A.2d at 136. The court clearly has decided that the doctrine applies to law enforcement services and services akin to police and fire protection, and that the existence of a user-fee does not necessarily create a special relationship. *See Morgan v. District of Columbia, supra*, 468 A.2d at 1313 (no special relationship arises from fact person requests police assistance, nor from gratuitous promise to provide services); *Wanzer v. District of Columbia*, 580 A.2d 127 (D.C.1990) (noting history of free ambulance service, present prohibition against denying service for inability to pay, and "heavy subsidy to the E[mergency] M[edical] S[ervices] from general revenues"). Moreover, within this area of providing police and related services, the doctrine applies to actions as well as inactions by District government employees. *See*

*Nichol v. District of Columbia Metro. Police Dept.*, 444 A.2d 1 (D.C.1981) (en banc) (where officer directed plaintiff's companion to cease efforts to obtain identification of assailants, and then failed to obtain the information himself, court held that the officer's "actions and failings ... possessed no additional element necessary to create an overriding special relationship and duty") (companion case to *Warren v. District of Columbia, supra*, 444 A.2d at 1). To determine whether the District may be held liable, a court must analyze whether the duty owed to the victim is a general duty to the public-at-large, in which case the public duty doctrine insulates the District from liability, or a special duty to the plaintiff, in which case the "special relationship" exception to the public duty doctrine applies and the District is subject to suit.[6]

The question we must decide, therefore, is whether appellant has alleged an actionable claim by reason of the existence of a special duty owed to her, and thereby has brought herself within the special relationship exception.

---

**5.** A number of public policy considerations underlie the public duty doctrine. *See Spencer v. General Hospital, supra*, 138 U.S.App.D.C. at 51, 425 F.2d at 482. Courts concerned with separation of powers maintain that the public duty doctrine is necessary to avoid "judicial scrutiny of every act of the other branches of government which has some effect upon the public." *Orzechowski v. State, supra*, 485 A.2d at 549 n. 3; *see Spencer v. General Hospital, supra*, 138 U.S.App.D.C. at 51, 425 F.2d at 482 (quoting *Elgin v. District of Columbia*, 119 U.S.App.D.C. 116, 337 F.2d 152, (1964) (retaining governmental immunity for injuries arising from "the performance of functions calling for the highest degrees of discretion and judgment.")). Other courts, focusing on fiscal concerns, fear either "a potential drain on the public coffers," Note, *Municipal Liability, supra*, at 469 (citations omitted), or that the encouragement of increased litigation will deprive the municipality of funds for correcting the governmental error that gave rise to the complaint. *Warren v. District of Columbia*, 444 A.2d 1 (appended to *Warren v. District of Columbia, supra*, 444 A.2d at 8–9). Other courts have viewed the issue from the government employee's perspective, maintaining that without the public duty doctrine such employees would be subject to an unreasonable litigation risk that could not be "passed on to their 'clients'." *Id.* In addition to reserving

questions about the appropriate allocation of limited resources to the executive and legislature, and concern about the "severe depletion of these resources," *Morgan v. District of Columbia, supra*, the court has emphasized the need for public employees to have broad discretion in responding to demands given limited resources and "the inescapable choices of allocation that must be made." 468 A.2d at 1311 (citation omitted). Without such a limitation on liability, the District would be potentially liable for "every oversight, omission, or blunder made by a police, [ambulance or building inspection] official." *Id.*

**6.** The District does not claim in the instant case that it is immune from liability. *See* 57 AM. JUR.2D *Municipal, County, School, and State Tort Liability* § 225, at 237–38 (noting "courts have also posited that the decision to issue a license apparently did not involve a discretionary function") (footnote and citation omitted); *cf.* Annotation, *Issuance of Permits, Licenses, and the Like as within 28 U.S.C.S. § 2680(a) Excepting From Federal Tort Claims Act Claims Involving Discretionary Function or Duty*, 35 A.L.R. FED. 481, 509 (1977) ("discretionary function" exception under Federal Tort Claims Act, 28 U.S.C.S. § 2680(a), inapplicable to claims "based on the allegedly negligent issuance of certificates").

III

■ Under the public duty doctrine, "a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public." *Klahr v. District of Columbia, supra,* 576 A.2d at 719 (citations omitted). Thus, in the area of police services, the court explained that a special legal duty is created "when there is a course of conduct, special knowledge of possible harm, or the actual use of individuals in the [criminal] investigation." *Warren v. District of Columbia, supra,* 444 A.2d at 3. In other words, liability exists where a " 'special relationship' between the city and the injured party" is established. *Turner v. District of Columbia, supra,* 532 A.2d at 667 (citation and footnote omitted). The court suggested in *Turner* that "there are at least two ways to demonstrate the existence of a 'special relationship'...." *Id.* at 667. A "special relationship" can be established by a statute prescribing "mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole," *Morgan v. District of Columbia, supra,* 468 A.2d at 1314 (citations and internal quotation omitted), or by satisfying the two-prong test established by *Platt v. District of Columbia, supra,* 467 A.2d at 151 (citing *Warren v. District of Columbia, supra,* 444 A.2d at 11 (Kelly, J., concurring in part and dissenting in part)), discussed *infra* p. 1131. Appellant asserts that she can satisfy either test.

Appellant contends that as a result of the District's law requiring registration of motor vehicles, the District has established a special class of individuals who must take certain steps in order to exercise the privilege of owning and operating a motor vehicle in the District of Columbia. Further, she contends that by issuing her a registra-

tion certificate and license plates bearing someone else's number, it was reasonably foreseeable that, if the error were discovered outside of the Offices of the Bureau of Motor Vehicle Services, serious consequences could result for appellant. Therefore, she contends the public duty doctrine does not bar her lawsuit because she was identified as the recipient of the particular services, which are not analogous to police or fire protection provided to the general public, and which are funded by a user fee.[7]

■ In determining whether a statute or regulation establishes a "special relationship," the court has not to date defined a protected class in as broad a manner as appellant urges. Licensing and permit statutes do not necessarily create a "special relationship." *District of Columbia v. Forsman,* 580 A.2d 1314, 1317–18 (D.C. 1990) (demolition permits; third party claim); *Platt v. District of Columbia, supra,* 467 A.2d at 152 (occupancy permits for businesses, and necessary fire and building code inspections, third party claim). No statute or regulation relevant here prescribes, to an extent previously held sufficient to create a special relationship, "mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole." *Turner v. District of Columbia, supra,* 532 A.2d at 667 (finding a protected class of abused children in the Child Abuse Protection Act, which mandated actions by the District (citing *Morgan v. District of Columbia, supra,* 468 A.2d at 1314)). Although D.C.Code § 40–102(c) (1990 Repl.) requires the District to issue a certificate and identification tag to qualified motor vehicle owners, the District argues, not unpersuasively, that the purpose of this provision— facilitating law enforcement—is to protect the public-at-large and not motor vehicle

---

7. Appellant's reliance on *Scott v. District of Columbia,* 493 A.2d 319 (D.C.1985), to support her contention that the District owed her an individual duty, is misplaced. In *Scott* the plaintiff was mistakenly arrested because a WALES printout incorrectly listed her name as a wanted

fugitive. *Id.* at 320. The court noted only that she had not alleged a computer tort claim, and hence "the District did not have sufficient notice within the period of limitations of the claim against which it would have to defend. *See* Super.Ct.Civ.R. 8(f)." *Id.* at 323.

owners as a special "class."[8] Improved law enforcement protects not only motor vehicle owners but others, such as pedestrians and passengers, some of whom do not own motor vehicles. Therefore, as the District maintains, the government's interest and purpose in obtaining the information about appellant's car was limited to law enforcement, and its duty was to the general public, not to provide appellant with benefits or services in any manner different from those provided to members of the general public. In this sense, she was treated as was everyone else who applied for registration.

Nevertheless, another type of statute may give rise to a special relationship even though it does not mandate duties for a special class. A statute which affords an individual the opportunity to seek its protection by taking certain actions may give rise to a special duty to that individual. Thus, appellant contends that a "special relationship" arose between herself and the District of Columbia Bureau of Motor Vehicle Services when, as required by law, she registered her car by filling out forms, making a sworn statement, and paying a fee.

In *Platt v. District of Columbia, supra,* the court adopted a two-prong test for a "special relationship" of this kind, under which a plaintiff must demonstrate: "1) a direct contact or continuing contact between the victim and the governmental agency or official; and 2) a justifiable reliance on the part of the victim." 467 A.2d at 151 (citing *Warren v. District of Columbia, supra,* 444 A.2d at 11 (Kelly, J., concurring in part and dissenting in part)).[9] The first prong, which focuses on the contact between the plaintiff and the public official, requires "some form of privity between the police department and the victim that sets the victim apart from the general public.... That is, the victim must become a reasonably foreseeable plaintiff." *Warren v. District of Columbia, supra,* 444 A.2d at 10 (Kelly, J., concurring in part and dissenting in part) (citing *City of Tampa v. Davis,* 226 So.2d 450, 454 (Fla. 2nd Dist.Ct.App.1969)). The required contact must, in other words, be a "direct transaction with the person injured" or "an arms-length relationship in which the city's agent is dealing directly, in some form, with the person injured." *City of Tampa v. Davis, supra,* 226 So.2d at 452–53.

It could be argued that appellant's contact with the Bureau of Motor Vehicle Services did not satisfy the first prong of the test.[10] In *Wanzer v. District of Columbia, supra,* 580 A.2d at 132, the court noted that even a series of contacts over a period of time is not enough "absent some showing that the agency assumed a greater duty to that person than the duty owed to the public at large." But the broad language in *Hines* merely states the obvious,

---

8. With respect to the WALES system, the District points to the statement in the Report of the President's Commission on Crime in the District of Columbia (1966), which indicates that the benefits would "result to the community." *Id.* at 192.

9. The court adopted the two-prong test based on the decision in *Florence v. Goldberg,* 44 N.Y.2d 189, 404 N.Y.S.2d 583, 375 N.E.2d 763 (1978). *See Warren v. District of Columbia, supra,* 444 A.2d at 10 (Kelly, J., concurring in part and dissenting in part); *see also id.* at 1125 n. 2 (majority opinion). In *Florence v. Goldberg,* the city was held liable on the basis of a special relationship found to arise after a mother who, upon observing for two weeks a police-supplied school crossing guard at a busy intersection, decided to accept employment and send her child to school by himself. The child was hit by a taxi at that intersection on a day when the crossing guard was ill and the Police Depart-

ment failed to provide a replacement or notify school officials. The New York court distinguished the general public duty cases on the grounds that the crossing-guard duty voluntarily assumed by the police was a limited one, directed at a specific class of individuals, and the mother had seen the service and relied to her detriment on the police department's decision to provide a guard. *Florence v. Goldberg, supra,* 44 N.Y.2d at 189, 404 N.Y.S.2d at 583, 375 N.E.2d at 763.

10. At oral argument, appellant's counsel stated that he believed appellant had *not* appeared personally at the Bureau of Motor Vehicle Services to apply for the registration of her car, but had relied on a "runner." However, the use of a "runner" does not change the fact that the transaction was between appellant and the Bureau of Motor Vehicle Services, since the "runner" was serving as appellant's personal agent.

namely, that mere contacts are insufficient in the absence of evidence of a special duty arising as a result. The *Platt* test takes this into account because it requires not only proof of a type of contact different from that of the District with the general public, but also proof of justifiable reliance.[11]

■ Appellant met the first prong of the *Platt* test for a special relationship because the District's duty under the statute to issue her the correct license plates and registration for her car arose from a "direct transaction"—as evidenced by her application and payment of a fee—between herself and the Bureau of Motor Vehicle Services. This direct and personal transaction was an undertaking by the District to her individually that the number on her license tags and registration belonged only to the car she owned. *See* D.C.Code § 40–102(c) (1990 Repl.); *see Morgan v. District of Columbia, supra,* 468 A.2d at 1314; *cf. Rieser v. District of Columbia, supra,* 183 U.S.App.D.C. at 392, 563 F.2d at 479. While paying a fee may be insufficient standing alone to create a special relationship, *see Wanzer v. District of Columbia, supra,* 580 A.2d at 130, it is one factor properly considered in determining whether a "direct transaction" took place between appellant and the District.[12]

To drive a car without suffering penalties of law, appellant was required by District of Columbia law to register her car,

and to renew her registration annually. D.C.Code §§ 40–102(a) & (b) & (d), 40–105(a)(1) & (b) (1990 Repl.). The statute described the obligation that the District assumed upon accepting her application and issuing license tags and a registration. *Id.* § 40–102(c). Thereafter it was reasonably foreseeable by the District that if appellant's registration and license tags' number were incorrectly recorded and entered in the WALES system, she could suffer various penalties including the impoundment of her car, as occurred here. *Id.* §§ 40–102(g)(3), 40–105(a)(1); 18 DCMR §§ 411.3, 429.3(c); Md.Trans.Code Ann. § 13–402.1(f) (1987) (misdemeanor for nonresidents' noncompliance with registration requirements); 18 DCMR §§ 1101.1, 1110.1 ($300 fine or 10 days in jail); *see also United States v. Hill,* 458 F.Supp. 31, 32 (D.D.C.1978) (impoundment for failure to register).

Appellant also has met the second, or "justifiable reliance" prong of *Platt.* The registration system is premised on different numbers being assigned to every vehicle. D.C.Code § 40–102(c); 18 DCMR §§ 413.5, 413.8 ("identification tags are solely for the operation of the vehicle described on the registration card which accompan[ies] them"). Indeed, the effectiveness of the registration system as well as the WALES system depends on an individualized numbering system in which registration numbers are accurately entered into

---

**11.** "Justifiable reliance, in this context of proving a special relationship, means particular or special reliance." *Morgan v. District of Columbia, supra,* 468 A.2d at 1315 (citations omitted). The court has drawn a distinction between cases involving victims who suffer from public officials' fail[ure] to show up at all or do nothing after their arrival, "and those who suffer from public officials' 'affirmative negligence.'" *Johnson v. District of Columbia, supra,* 580 A.2d at 142 (citing *Warren v. District of Columbia, supra,* 444 A.2d at 7–8 (suggesting a special duty exists where there is "negligent handling of a police dog, negligent operation of a police vehicle [or] negligent use of a police weapon"), and *Weeda v. District of Columbia,* 521 A.2d 1156 (D.C.1987) (actionable duty where ambulance crew negligently removed plaintiff from auto wreckage)). "While a victim may arguably 'rely' on [a public official] not to worsen her condition, no such reliance can fairly be based

on the inaction or futile action [of such official].…" *Johnson v. District of Columbia, supra,* 580 A.2d at 143.

**12.** The user-fee paid by appellant differs from the $35 ambulance services fee in *Wanzer.* The ambulance services fee was waived for those unable to pay, and no one could be asked about their ability to pay at the time services were requested. *Wanzer v. District of Columbia, supra,* 580 A.2d at 131. Furthermore, for purposes of satisfying the first prong of the *Platt* test, the significance of the user-fee is not that it exists but that it was actually paid, thereby establishing a direct and individualized contact between appellant and the Bureau of Motor Vehicle Services. By contrast, the plaintiff's deceased brother in *Wanzer* established no such contact since he never paid an up-front fee as a means of obtaining the ambulance services that never arrived. *Id.*

the computer. *Id.* § 40–102(f) ("[t]o facilitate the identification and regulation of motor vehicles ... the Mayor shall establish ... (4) [a] program for keeping records of registration...."); *id.* § 40–102(e)(1) (registration is nontransferable since it expires upon sale or transfer of the vehicle). Since the sanctions of the registration law are visited upon a registrant through the operation of the WALES system, appellant also could justifiably assume that the District, in the interests of assuring the effectiveness of the WALES system, would accurately record her license and registration number in the WALES system.

The statutory scheme for lawful operation of a motor vehicle placed certain responsibilities on appellant which, upon their fulfillment, in return placed responsibilities on the District to her as the owner of the registered vehicle. Appellant relied to her detriment on the District's affirmative actions in registering her car after accepting her application and fee, and her reliance was reasonable. By issuing a registration and license tags with a certain number, the District made constructive representations to appellant that that registration number had been assigned to her car. D.C.Code § 40–102(e)(1). Appellant's subsequent reliance was not that of a member of the general public—upon the general assurance that the registration and WALES system would serve their law enforcement purposes—but rather upon the specific representation to her that her car would be

correctly registered and her registration number correctly entered into the WALES system. She relied on the District's representation when she affixed the license tags to her car and drove it into Maryland in the belief that, having properly registered her car under the District's law, she would not suffer the penalties for driving without a valid registration and license tags.

Accordingly, because appellant sufficiently stated a claim of negligence against the District as a result of its special duty to her, thereby placing her within the special exception to the public duty doctrine, we reverse the judgment dismissing her complaint.[13]

SCHWELB, Associate Judge, concurring in the judgment:

I concur in the judgment, as well as in much of Chief Judge ROGERS' opinion. I write separately, however, to explain my view that the public duty doctrine has not previously been applied, and ought not be applied, to the type of situation here presented.

Chief Judge ROGERS describes the public duty doctrine as being somewhat akin to the defense of sovereign immunity. *Ante* at 1126. Sovereign immunity, as she observes, stems from the historical maxim that "the King can do no wrong." The problem is, however, that he can do wrong and often does. The divine right of kings would make sense if kings (or govern-

---

**13.** According to our concurring colleague, who apparently favors a much narrower public duty doctrine than has been adopted by this court, the majority "presumes ... that because the *defendant in this case* is the District of Columbia, the[ ] familiar principles of negligence do not apply." Concurring opinion at 21. This is incorrect. The public duty doctrine is applied to determine whether a duty exists, which is a basic element of negligence. *See generally Rieser v. District of Columbia, supra,* 183 U.S.App. D.C. at 390, 563 F.2d at 477. The doctrine rests on the understanding, repeatedly accepted by this court as sound, that duties owed by government to "everyone" are conceptually and practically distinct from duties owed to individuals, and hence enforceable by different means. *See Warren v. District of Columbia, supra,* 444 A.2d at 8. Moreover, the public duty doctrine is not the "analytical cousin of the private rescue cases," concurring opinion at 1135 if by that

Judge Schwelb means that the doctrine should apply only where the latter cases would admit of no liability. The rationale for no-duty-to-rescue cases is that the actor never even assumes a duty toward the victim. By contrast, the point of the public duty doctrine is that government assumes a very broad range of obligations to the public-at-large, enforceable through the political and administrative processes, but that to allow suit for breach of those duties by individuals with whom no special relationship has been established would have profound costs, *see* note 5, *supra,* that outweigh any governmental desire to compensate for individual harms. The legislature has determined only that there shall be no governmental immunity in suits for money damages arising from the negligent operation of vehicles, other than emergency vehicles on emergency runs, by District government employees. *See* D.C.Code §§ 1–1213, 1–1215 (1987 Repl.).

ments) always conformed their conduct to divine or angelic norms. Unfortunately, they do not. For this reason, and because, as the majority points out, "the doctrine of sovereign immunity often led to unfair results," *ante* at 3, that doctrine has been abolished for tort actions in this jurisdiction, at least to the extent that "ministerial" (as distinguished from discretionary) functions of the District government are involved.[1] *See District of Columbia v. Pace,* 498 A.2d 226, 228–29 (D.C.1985); *Chandler, supra* note 1, 404 A.2d at 965; *Wagshal v. District of Columbia,* 216 A.2d 172, 173 (D.C.1966).[2]

Absent sovereign immunity or some other compelling reason, conventional principles of the law of negligence presumptively do and should apply, no matter whether the defendant is the District or one of its citizens. *See, e.g., District of Columbia v. White,* 442 A.2d 159, 162–63 (D.C.1982). The elements of negligence are (1) the existence of a duty owed by the defendant to the plaintiff, (2) a negligent breach of that duty by the defendant, and (3) an injury to the plaintiff (4) proximately caused by the defendant's breach. *See, e.g., District of Columbia v. Fowler,* 497 A.2d 456, 462 n. 13 (D.C.1985); *Morrison v. MacNamara,* 407 A.2d 555, 560 (D.C.1979); PROSSER, *supra* note 2, § 30. The District has conceded the second element, and Ms. Powell has indisputably alleged facts in her complaint which, if proved, would establish the third and fourth. The only remaining question is whether the District owed a duty to Ms. Powell to process her automobile registration properly.

Ordinarily, a defendant must exercise reasonable care to avoid unreasonable risk of injury to others. *Munson v. Otis,* 396 A.2d 994, 996 (D.C.1979); *Donoghue v. Stevenson,* 1932 App.Cas. 562, 580 (appeal taken from Scot.); PROSSER, *supra* note 2, § 53, at 358. In determining whether a defendant owes a duty to a particular individual, the dispositive question is generally whether injury to that individual was reasonably foreseeable to the defendant. *Kline v. 1500 Mass. Ave. Apt. Corp.,* 141 U.S.App.D.C. 370, 375–78, 439 F.2d 477, 482–85 (1970); *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, ——, 162 N.E. 99, 101, (1928); PROSSER, *supra* note 2, § 43, at 284–290. That, however, is as far as the defendant's duty extends. He is not obliged to *rescue* others from peril or to aid them in time of need, at least in the absence of proof of a special relationship between him and the plaintiff. *In re A.C.,* 573 A.2d 1235, 1244 (D.C.1990) (en banc); *Rieser v. District of Columbia,* 184 U.S.App.D.C. 375, 393, 563 F.2d 462, 480 (1977); *Yania v. Bigan,* 397 Pa. 316, 322, 155 A.2d 343, 346 (1959); PROSSER, *supra* note 2, § 56, at 375–77.

There is no allegation in the present case that the District owed Ms. Powell a duty to rescue or protect her from some pre-existing peril. Rather, the harm which Ms. Powell claims to have suffered was caused solely by the District. When municipal employees entered Ms. Powell's registration data into the WALES system under a number which had already been issued to someone else, it was reasonably foreseeable that, if the error were to be discovered by the gendarmerie at some inopportune time, Ms. Powell could find herself in an unanticipated quandary. Since tortfeasors generally owe a duty of reasonable care to foreseeable plaintiffs, this would have been the

---

1. In *Elgin v. District of Columbia,* 119 U.S.App. D.C. 116, 118–19, 337 F.2d 152, 154–55 (1964), ministerial functions were defined as those reflecting "the execution of policy as distinct from its formulation." Discretionary functions, on the other hand, involve determinations of policy which often affect large numbers of people and "call for a delicate balancing of competing considerations." *Owen v. Independence,* 445 U.S. 622, 648, 100 S.Ct. 1398, 1414, 63 L.Ed.2d 673 (1980); *see also Chandler v. District of Columbia,* 404 A.2d 964, 966 (D.C.1979). I do not think any serious argument can be made that entry of data regarding license plate applications into a computer system involves the formulation of policy or "delicate balancing."

2. Most American jurisdictions have likewise abolished or limited the doctrine of sovereign immunity in relation to the exercise by a governmental entity of ministerial functions; some have gone even further. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 131, at 1044–54 (5th law. ed. 1984) (hereinafter PROSSER).

end of the matter if the suit had been against a non-governmental defendant. No showing of a special relationship of the kind required in "rescue" cases would then have been necessary if the defendant had been a private party.

The majority presumes, however, that because the defendant in this case is the District of Columbia, these familiar principles of the law of negligence do not apply. Chief Judge ROGERS would effectively require Ms. Powell, in order to recover, to prove the existence of a special relationship between the District and herself (*e.g.*, an affirmative representation by the District upon which Ms. Powell reasonably relied to her detriment), which would not be an element of her case if she were suing a private corporation. I disagree with this approach. Unlike the majority, I would start with the presumption that, except in carrying out its discretionary functions, the District, like any other party, must exercise reasonable care to avoid injury to a foreseeable plaintiff. If the District fails to do so, and if the proximate result of its failure is injury to the plaintiff, then the District should presumptively be required to compensate her for those injuries. "There is perhaps no doctrine more firmly estab-

lished than the principle that liability follows tortious wrongdoing; that where negligence is the proximate cause of injury, the rule is liability and immunity is the exception...." *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963).

The District claims exemption from liability to Ms. Powell for its negligence on the theory that relief is barred by the so-called public duty doctrine. Some courts have reasonably concluded, albeit without my metaphor, that even as heretofore applied, that doctrine is an albatross around the neck of justice.[3] Whether or not it ought to be abolished in this jurisdiction, however, is not the question before us. Rather, we must decide whether the public duty doctrine should be extended to reach this case.

In our previous cases, the public duty doctrine has been applied exclusively to situations in which the District has allegedly failed to take affirmative steps to rescue or protect a plaintiff from an injury or a peril caused by someone or something other than the District itself.[4] Application of the doctrine to that type of case does not carve out an unprincipled exception to the

---

**3.** See, e.g., *Adams v. State*, 555 P.2d 235, 241–44 (Alaska 1976); *Leake v. Cain*, 720 P.2d 152, 155–60 (Colo.1986) (en banc); *Commercial Carrier Corp. v. Indiana River County*, 371 So.2d 1010, 1015–17 (Fla.1979); *Wilson v. Nepstad*, 282 N.W.2d 664, 667–74 (Iowa 1979) (en banc); *Stewart v. Schmieder*, 386 So.2d 1351, 1357–58 (La.1980); *Maple v. City of Omaha*, 222 Neb. 293, 299–301, 384 N.W.2d 254, 259–60 (1986); *Schear v. Board of County Comm'rs*, 101 N.M. 671, 673–674, 687 P.2d 728, 730–31 (1984); *De-Long v. County of Erie*, 60 N.Y.2d 296, 305–06, 457 N.E.2d 717, 721–22, 469 N.Y.S.2d 611, 616–17 (1983); *Brennen v. City of Eugene*, 285 Or. 401, 406–411, 591 P.2d 719, 723–25 (1979) (en banc); *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 539–540, 247 N.W.2d 132, 139 (1976); *De-Wald v. State*, 719 P.2d 643, 652–53 (Wyo.1986). In *Chambers–Castanes v. King County*, 100 Wash.2d 275, 286 n. 5, 669 P.2d 451, 458 n. 5 (1983), the Supreme Court of Washington, while upholding the public duty doctrine in principle, severely criticized case law in this jurisdiction for applying the doctrine too inflexibly.

**4.** See, e.g., *Wanzer v. District of Columbia*, 580 A.2d 127, 131–32 (D.C.1990) (absent special relationship, District cannot be held liable for negli-

gent failure promptly to respond to request for ambulance); *Klahr v. District of Columbia*, 576 A.2d 718, 719 (D.C.1990) (District owes no individually enforceable duty to protect victims allegedly murdered by escapee from negligently operated halfway house); *Platt v. District of Columbia*, 467 A.2d 149, 151 (D.C.1983) (District's failure properly to inspect movie theater does not create liability to individual patrons of theater injured by conditions which proper inspection would have disclosed); *Morgan v. District of Columbia*, 468 A.2d 1306, 1310–11 (D.C. 1983) (en banc) (neither law enforcement officials nor the District may be held liable for failure to protect individual citizens from harm caused by criminal conduct); *Warren v. District of Columbia*, 444 A.2d 1, 3 (D.C.1981) (neither District nor police officials can be held liable for failure of police properly to respond to request from victims for protection from burglars); *see also District of Columbia v. Forsman*, 580 A.2d 1314, 1317–18 (D.C.1990) (District owes no individualized duty, in context of issuing building permits, to ensure that person to whom permit is issued secures liability insurance adequate to compensate neighbors for damage to their property caused by collapse of permittee's structure).

general concept of municipal liability for negligence in carrying out ministerial functions, for it is basically consistent with the common law doctrine that there is no affirmative duty to rescue absent some special relationship. In fact, the public duty cases are in some measure the analytical cousins of the private rescue cases.[5]

Our public duty precedents stand for the proposition that a plaintiff seeking recovery against the District for failing to save him from an existing peril or protect him from harm must establish a special relationship with the government sufficient to trump the general rule that, even for a governmental defendant, there is no duty to any individual citizen to provide such protection. If liability were readily imposed against the government in such a situation, then just about any victim of crime or misadventure might be viewed as having an arguable claim against the District as well as against the wrongdoer. Requiring a plaintiff who claims that the District negligently failed to rescue him, or to prevent harm to him from a third party, to distinguish his own situation from that of the citizenry as a whole is therefore at least arguably reasonable. Accordingly,

we held in *Platt, supra* note 4, 467 A.2d at 151, in the context of the District's allegedly negligent failure adequately to carry out safety inspections of a movie theatre, and thus to prevent harm to patrons, that the plaintiffs must demonstrate: "1) a direct or continuing contact between the victim and the governmental agency or official; and 2) a justifiable reliance on the part of the victim." Soon thereafter, in *Morgan, supra,* 468 A.2d at 1314, we adopted a two-part test which defined the requisites of a special relationship as being "(1) a specific undertaking to protect a particular individual, and (2) justifiable reliance by the plaintiff." These rules, as elaborated in other public duty doctrine cases, roughly correspond to those applied to private actors pursuant to common law rescue principles.

So far as I am aware, however, the public duty doctrine has never before been applied to a situation such as this one, in which it was solely the District's own lack of due care that actively and directly caused the plaintiff harm.[6] If a negligently operated District police car were to strike and injure Ms. Powell, the District

---

**5.** My colleagues dispute this analogy upon the ground that the public duty doctrine "is applied to determine whether a duty exists." That, however, is also the essence of the rescue doctrine—there is no enforceable duty to rescue another individual. The only difference is that where the potential rescuer is the government, the argument for imposing such a duty to an individual is stronger because it is the government's job to provide protection to the community at large.

Our public duty cases stand for the proposition that notwithstanding this difference, the existence of an obligation to protect "everyone" will not be treated as a duty to any particular individual. That is as far as our precedents have gone. See note 6, *infra.* For the reasons stated below in the text of this opinion, I do not think that we should now go further.

**6.** *Compare Wanzer, supra,* note 4, 580 A.2d at 130–31, *and Hines v. District of Columbia,* 580 A.2d 133, 136–37 (D.C.1990) (holding that public duty doctrine barred suit against District for failure of ambulance service to respond promptly to calls for help), with *Johnson v. District of Columbia,* 580 A.2d 140, 142–43 (D.C.1990) (holding that District could be held liable if affirmative negligence of ambulance service actively worsens plaintiff's injuries).

My colleagues apparently contend that *Nichol v. District of Columbia Metro. Police Dep't,* 444

A.2d 1, decided in *Warren v. District of Columbia,* 444 A.2d 1 (D.C.1981) (en banc), is contrary to my view that the public duty doctrine is inapplicable where there was no prior peril from which the plaintiff needed rescue and where the harm to the plaintiff was the result solely of the District's negligence. In *Nichol,* however, the plaintiff had been assaulted by third parties following an automobile accident, and the police had failed to obtain information about his assailants so that he could sue them— a classic rescue situation. The police had also instructed the plaintiff to discontinue his own efforts to identify the villains, but the court's holding that this did not create liability went only to the question of what constitutes a special relationship, and had absolutely nothing to do with any notion that the public duty doctrine applies in non-rescue situations.

Chief Judge ROGERS also cites *Johnson v. District of Columbia,* 580 A.2d 140, 143 n. 4 (D.C.1990), for the same proposition as *Nichol. Johnson* was another classic rescue case, involving the failure of an ambulance properly to respond to a call from the plaintiff's decedent. The passage on which the majority relies cites *Nichol,* and my discussion of *Nichol* applies to it as well.

would be required to compensate her for her injuries.[7] The Corporation Counsel conceded at argument, moreover, that the District would likewise be liable if such an accident resulted from the failure on the part of an agent of the District adequately to inspect or maintain the car's brakes, even though no particular individual would be a foreseeable plaintiff. I see no principled basis for differentiating between Ms. Powell's situation and that of a victim of an automobile accident caused by the District's lack of due care.

The harm allegedly suffered by Ms. Powell was not of some intangible or theoretical character. On the contrary, it was real. She maintains that as a result of the mismatch between her license plate and the information which the District's employees negligently entered into the WALES system, she and two companions found themselves stranded on a remote highway in Anne Arundel County, Maryland at 2:30 a.m. one cold December morning, her Ford Escort having just been impounded. When she became understandably upset at the police officer's not-so-subtle accusation that she had stolen the vehicle, the officer told her that if she "didn't be quiet, he was going to lock [her] up." Frightened, lost, and unfamiliar with the surroundings in which they found themselves, the astonished and bewildered trio had to make their way some distance through the snow even to find a telephone. It was almost dawn when they managed to find a taxicab to drive them home.[8] In the weeks following her misadventure, according to Ms. Powell, she had to go to the trouble of contesting the citation she had been so undeservedly given as a result of the District's error, and of retrieving and re-registering her car and obtaining unimpeachable license plates for it. If Ms. Powell can prove by a preponderance of evidence that all of this travail

was a proximate result of the District's negligence, a doctrine which in my view was devised for entirely different circumstances should not stand in the way of her recovery.

None of the public policy considerations which Chief Judge ROGERS describes in footnote 5 to her opinion as supporting the public duty doctrine warrants application of that doctrine here. A decision in Ms. Powell's favor is a far cry indeed from imposing judicial scrutiny over every act of the non-judicial branches of government. The need of public employees to retain "broad discretion" in the exercise of their functions does not extend to entering erroneous computer data or to issuing someone the wrong license plate. To the extent that the public fisc is diminished by holding the District liable in such a case as this, that consequence is not nearly as unjust as leaving Ms. Powell uncompensated for the harm which, if the allegations of her complaint are true, the District's negligence has surely caused her.

Arizona's experience is instructive. In 1963, the defense of sovereign immunity was judicially abolished for all claims against the state. *Stone, supra,* 93 Ariz. at 392, 381 P.2d at 112. Six years later, the court adopted the public duty doctrine. *Massengill v. Yuma County,* 104 Ariz. 518, 521–523, 456 P.2d 376, 379–81 (1969). In 1982, the court overruled *Massengill,* holding that "the parameters of duty owed by the state will ordinarily be coextensive with those owed by others." *Ryan v. State,* 134 Ariz. 308, 310, 656 P.2d 597, 599 (1982). Responding to ominous governmental warnings of impending doom, the court remarked:

> We are also told that not only will the public treasury suffer but government will come to a standstill because its

7. *See Warren, supra* note 4, 444 A.2d at 7. *See also District of Columbia v. Woodbury,* 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472 (1890) (District liable for negligent maintenance of public streets directly injuring plaintiffs); *Booth v. District of Columbia,* 100 U.S.App.D.C. 32, 241 F.2d 437 (1956) (same); *Spencer v. General Hosp.,* 138 U.S.App.D.C. 48, 53, 425 F.2d 479, 484 (1969) (District liable for negligent provision of medical services worsening plaintiff's condi-

tion); *Elgin v. District of Columbia, supra* note 1, 119 U.S.App.D.C. at 120, 337 F.2d at 156 (District liable for negligent maintenance of schoolyard fence directly injuring child).

8. Ms. Powell testified in her deposition that the taxicab driver "charged us 15 [dollars]. He only charged us $15 *because that is all we had.*"

agents will be afraid to act. We can't but recall the dire predictions attendant to the publication of the *Stone* decision. Arizona survived!

*Id.* 134 Ariz. at 309, 656 P.2d at 598. So, too, the demise of the District of Columbia is not yet around the corner, irrespective of the result of this case.

I am gratified that my colleagues recognize the improvidence of barring Ms. Powell from the courthouse door. I believe, however, that the eminently fair result which they have reached ought to be secured by a simpler and more straightforward route. I would favor the application of traditional doctrines of negligence, rather than embarking upon a search for exceptions to a public duty doctrine which, whatever its merits in some other situation, seems to me to have no bearing whatever on this one.