**TRIFAX CORP., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

No. Civ.A. 98–2824(GK).

United States District Court, District of Columbia.

June 14, 1999.

**22**

Peter A. Greene, Thompson Hine & Flory, Washington, DC, for plaintiff.

Jack M. Simmons, III, Assistant Corporation Counsel, Washington, DC, for defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter comes before the Court upon Defendants' Motion to Dismiss [# 12]. Plaintiff, Trifax Corporation, brings suit against the District of Columbia, various agencies of the District of Columbia,[1] and various District of Columbia officials in both their official and individual capacities,[2] alleging Constitutional and common law violations. Count I of Plaintiff's Complaint alleges a violation of Plaintiff's Constitutional right to due process. Plaintiff further alleges Count II for common law defamation and Count III for common law negligence. Upon consideration of Defendants' Motion, Plaintiff's Opposition, Defendants' Reply, and the entire record herein, for the reasons set forth below, Defendant's Motion to Dismiss is **granted in part and denied in part.**

## I. *Factual Background*[3]

Plaintiff, Trifax Corporation, a District of Columbia-based government contractor, provides health care and nursing services to residents of the District of Columbia and other jurisdictions. In April 1995, Plaintiff entered into a contract with the Department of Health ("DOH") to provide pre-natal care services. The contract specified a term of one year, with options for DOH to renew. In April 1997, DOH exercised its renewal option and extended the contract term to August 26, 1998.

In December 1996, Plaintiff entered into a separate contract with the District of Columbia General Hospital ("DCGH") to supply nurses and medical assistants to various clinics. That contract specified a one year term as well, with an option for DCGH to renew. In December 1997,

1. These include the Office of the Inspector General of the District of Columbia, the District of Columbia Department of Health, the District of Columbia Department of Human Services, the District of Columbia Department of Administrative Services, and the District of Columbia Health and Hospitals Public Benefit Corporation.

2. Plaintiff brings suit against the following individuals in their official capacities: the mayor of the District of Columbia; E. Barrett Prettyman, Jr., former Inspector General for the District of Columbia; Robert Thomas, Thomas Brown, and Ronald Gaskins, of the Inspector General's Office; Marlene N. Kelly, Evan R. Arrindell, and John Mileo, of the Department of Health; Jearline F. Williams, John M. Oppedisano, and Albert Davis, of the Department of Human Services; Richard P. Fite of the Department of Administrative Services; and John Fairman and Roscoe Wade of the District of Columbia Health and Hospitals Public Benefit Corporation. Defendants Thomas, Gaskins, Arrindell, Mileo, Oppedisano, Davis, and Wade are also sued in their individual capacities.

3. For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n of Am.,* 606 F.2d 1251, 1253 (D.C.Cir.1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint.

DCGH extended the contract term to January 29, 1998.[4]

In May 1997, the Office of the Inspector General ("OIG") initiated an investigation of Plaintiff's operations under its contracts with the District of Columbia, allegedly at the request of a District of Columbia Council Member. In November 1997, OIG released a report entitled "Review of the Department of Human Services and the District of Columbia General Hospital Contracts with the Trifax Corporation" ("OIG Report"). The OIG Report charged Plaintiff with various statutory and regulatory violations, as well as business improprieties, and ultimately recommended that Plaintiff be barred from competing for future contracts with the District of Columbia.

Plaintiff alleges that the OIG Report was both procedurally deficient and contained numerous erroneous factual findings. Specifically, Plaintiff alleges that the OIG failed to perform an "exit interview", and failed to provide Plaintiff an opportunity to review or comment on a draft of the OIG Report, as mandated by the Generally Accepted Government Audit Standards ("GAGAS") promulgated by the Comptroller General of the United States.

Plaintiff also alleges that officials within OIG specifically released a copy of the OIG Report to the *Washington Post* at the same time they released it to the public. The *Post* then relied upon the OIG Report to publish a critical and allegedly erroneous article about Trifax's operations on November 28, 1997. Other news agencies followed suit with similarly critical articles and news reports.

Plaintiff alleges that, as a direct result of the dissemination of the OIG Report, DCGH allowed its contract with Plaintiff to lapse on January 29, 1998, and declined to exercise its option to renew. Similarly, DOH requested that Plaintiff cease all operations with relation to its contract on

August 25, 1998, one day prior to the expiration date of the contract. Another contract with the District of Columbia Health and Hospitals Public Benefit Corporation ("PBC") was terminated as of September 30, 1998.

Defendant Prettyman, former Inspector General for the District of Columbia, contacted Plaintiff by mail on March 20, 1998, and offered to issue a revised report upon submission of further documentation. Although Plaintiff submitted a letter with documentation of errors in the OIG Report, the OIG has, to date, not released a revised report.

Plaintiff first alleges that Defendants violated Plaintiff's right to due process by denying it the right to compete for contracts on a fair and equitable basis. Plaintiff further alleges that Defendants' publication of the erroneous OIG Report constitutes common law defamation. Finally, Plaintiff charges Defendants with common law negligence for issuing the OIG Report without regard for generally accepted auditing standards.

In the interest of clarity, the Court will distinguish between two classes of defendants. Although Plaintiff has not specifically designated two separate groups of defendants, it is readily apparent from the Complaint that two separate classes do indeed exist—a critical factor to consider in deciding which claims survive dismissal. One class is comprised of individuals involved in the preparation and dissemination of the OIG Report. That class ("Class I") properly includes the District of Columbia, the mayor, Defendant Prettyman, the OIG, Defendant Thomas, Defendant Brown, and Defendant Gaskins. The second class is comprised of individuals who allegedly violated Plaintiff's rights by improperly terminating or declining to renew existing contracts. This class ("Class II") also includes the District of Columbia and

4. While Plaintiff's Complaint states that the DOH Contract provided for a term of one year with an option to renew, there is no explanation as to why the contract was initially entered into in April 1995, but not renewed until April 1997. Compl. at ¶¶ 39, 41.

the mayor, as well as Defendant Kelly, Defendant Arrindell, Defendant Mileo, Defendant Williams, Defendant Oppedisano, Defendant Davis, Defendant Fite, Defendant Fairman, Defendant Wade, and their respective agencies.

## II. *Standard of Review*

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As previously stated, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear*, 606 F.2d at 1253.

## III. *Analysis*

### A. Qualified Immunity of Individual Defendants

As a threshold issue, Defendants argue that those defendants sued in their *individual* capacities are entitled to qualified immunity on the due process claim, and that the Complaint must therefore be dismissed against them in their individual capacities.

■ Courts have long held that "government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[5] Faced with the countervailing concern that immunity offers a blanket protection for

violating constitutional guarantees, however, the Supreme Court settled on the proposition that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727 (emphasis added) (citations omitted).

■ The Supreme Court later clarified its holding in *Harlow* in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Addressing the standard by which a government official's conduct must be evaluated, the Court wrote:

[T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent. *Id.* at 640, 107 S.Ct. 3034 (citations omitted).

■ The Supreme Court recently reaffirmed its principles of qualified immunity in *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Although its holding is not directly relevant to this case,[6] the Court set forth the procedure which lower courts should follow in considering a defense of qualified immunity. The Court directed that "if the defendant does plead the immunity defense, the district court should resolve that

5. The Supreme Court held in the earlier case of *Butz v. Economou*, 438 U.S. 478, 503–04, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) that the scope of the immunity defense applies equally to state officials under 42 U.S.C. § 1983, as it does to federal officials under the United States Constitution.

6. In *Crawford–El*, the Supreme Court concluded that where a plaintiff brings a constitutional action against a government official which requires proof of the official's improper motive, lower courts may not require the plaintiff to meet a higher burden of producing clear and convincing evidence of such improper motive to overcome a motion for summary judgment.

threshold question before permitting discovery. To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Id.* at 1597 (citation omitted).

In the instant case, Plaintiff has sued seven agency officials in their individual capacities. With respect to these seven individuals, however, Plaintiff's Complaint is nearly devoid of any allegations of improper conduct. Plaintiff alleges simply that "[t]he conduct of Defendants Prettyman, Thomas, Brown and Gaskins in formulating and disseminating the OIG Report and in failing to issue a revised report, has caused and continues to cause quantifiable and unquantifiable injury to Trifax." Compl. at ¶ 59. The Complaint goes on to allege that the dissemination of the OIG Report, "all of which was caused both directly and proximately by the negligence or willful acts of Defendants Brown and Gaskins", led DCGH and DOH to decline renewal of their respective contracts. Compl. at ¶¶ 50, 51. Defendant Mileo is alleged to have issued a letter directing Trifax to cease operations on the DOH contract as of the date of expiration. Compl. at ¶ 51.

Plaintiff seeks to correct, its pleading deficiency in its Opposition Brief, arguing that:

Defendants Brown and Gaskins—issued an official OIG Report that falsely accused Trifax of engaging in a series of improprieties in violation of the law. . . . Because these Defendants disregarded such well established procedures for the proper preparation of an audit, their conduct thereby seriously stigmatized Trifax in a way that violated clearly established principles of due process. Pl.'s Mem. of Points and Authorities in Opp. to Mot. of Defs.' to Dismiss the Compl. Filed by Pl. Trifax Corp., at 20.

Even more conspicuous, however, is the complete lack of *any* allegations, other than their respective titles, with respect to Defendants Arrindell, Oppedisano, Davis, and Wade. Plaintiff simply states that "[t]hese violations have been compounded further by a cabal of D.C. Contracting Officers (the other individually sued defendants) who, without investigating Trifax, have improperly relied upon the false statements and conclusions of the OIG Report to thereby deny Trifax contracts to which it was otherwise entitled." *Id.* at 21.

The first step of the qualified immunity analysis is to determine whether the Defendants in this case performed discretionary functions within their line of duty. Here, it is beyond dispute that the OIG's investigation of Plaintiff falls within the category of "discretionary functions". Unlike "ministerial" functions, which accord a government agent no immunity, the investigation of government contractors and subsequent reporting of findings necessarily involve judgments "influenced by the decisionmaker's experiences, values, and emotions." *Harlow*, 457 U.S. at 816, 102 S.Ct. 2727.

Similarly, Defendants Arrindell, Mileo, Oppedisano, Davis, and Wade, contracting agents for their respective agencies, performed "discretionary functions" in considering all appropriate information before declining to renew contracts with Plaintiff. The decision whether to renew a contract or seek out new contractors rests squarely in the discretion of the respective agencies, and necessarily involves the exercise of the contracting agent's experience and values.

The second step of the qualified immunity analysis requires the Court to consider whether the individually named defendants "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 806, 102 S.Ct. 2727. That consideration must be based upon each Defendant's conduct as alleged in the Complaint. *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

With respect to the OIG Defendants, Plaintiff has alleged that Defendants Gaskins and Thomas disregarded GAGAS in the course of preparing and publishing the OIG Report in violation of D.C.Code § 1–

1182.8(b), which requires the Inspector General to give due regard to generally accepted accounting and procurement principles. By the very terms of the statute, however, the auditing standards set forth in GAGAS are not binding upon the OIG. *See* D.C.Code § 1–1182.8(b). In fact, Plaintiff can point to *no* authority which confers a clear statutory or constitutional right to see and comment on an auditing report prior to publication. As such, Plaintiff is simply unable to establish that Defendants Gaskins and Thomas violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. Defendants Gaskins and Thomas are therefore entitled to qualified immunity from suit in their individual capacities.

Plaintiff has also failed to allege in its Complaint any improper conduct by Defendants Arrindell, Mileo, Oppedisano, Davis, and Wade, much less establish any statutory or constitutional right to have its contracts renewed by those officials. These Defendants are therefore entitled to qualified immunity as to any claim of constitutional violations in their individual capacities. Accordingly, Defendants' Motion to Dismiss is **granted in part** with respect to Count I of the Complaint. The Complaint is dismissed as to all Defendants sued in their individual capacities.[7]

## B. Individual Agencies' Amenability to Suit

■ Plaintiff has brought suit against various District of Columbia agencies for their roles in terminating their respective contracts with Plaintiff. Defendants, citing to *Blackmar v. Guerre,* 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952), argue that a subordinate governmental agency may not sue or be sued in the absence of a statutory provision to that effect. There is no legislation granting any of the individually named agencies, with the exception of the PBC, the ability to sue or be sued.[8] Plaintiff failed to oppose this argument.

The Defendants have correctly stated the law on this issue. Accordingly, the Office of the Inspector General, the Department of Health, the Department of Administrative Services, and the Department of Human Services are *non sui juris,* and must be dismissed as parties. Defendant's Motion is therefore *granted* on all counts with respect to those agencies.

## C. Due Process Claim

■ Plaintiff alleges that Defendants, by disseminating a flawed OIG Report without regard to general auditing principles, and subsequently declining to renew existing contracts in reliance upon that Report, have violated rights, privileges, and immunities protected by the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.[9] Defendants respond that Plaintiff has failed to allege a constitutionally protected property right and that, in any case, Defendants have fully complied with the requirements of due process.

---

7. The defense of qualified immunity applies only to the extent that the Defendants are sued in their *individual* capacities. In *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court stated that "[w]hen it comes to defenses to liability, an official in a personal-capacity action, may ... be able to assert personal immunity defenses.... In an official-capacity action, these defenses are unavailable." *Id.* (citations omitted).

Defendants remain subject to liability on Plaintiff's Constitutional claim to the extent that they are sued in their official capacities.

8. The PBC is subject to suit pursuant to D.C.Code § 32–262.5(b).

9. While the Fifth Amendment is applicable to the District of Columbia, the Fourteenth Amendment is not. *Bolling v. Sharpe,* 347 U.S. 497, 498–99, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Defendants' Motion is therefore *granted* as to all counts arising under the Fourteenth Amendment.

Plaintiff claims it has constitutionally protected rights, privileges, and immunities which bestow an "entitlement to the contracts which it was awarded and ... the right to compete without unlawfully imposed handicaps for contracts for services which it is fully qualified to perform." Compl. at ¶ 66. While courts have consistently held that there is no right to any particular government contract, Plaintiff's claim is broader. In essence, Plaintiff argues that Defendants' conduct has impeded its *right to contract* in a fair procurement process. *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

Plaintiff cites to *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to support its claim of a constitutionally protected right. In *Roth*, a university professor with no tenure rights sued a state university for declining to renew his contract. The Supreme Court concluded that the plaintiff had not established a "liberty" interest protected under the Constitution, thereby failing in his claim of due process violations. In dicta, however, the Supreme Court relied on the fact that:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." ... Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities....

Had it done so, this, again would be a different case. For "(t)o be deprived not only of present government employment but of future opportunity for it is certainly no small injury...." *Id.* at 573–74, 92 S.Ct. 2701 (citations omitted).

Our Court of Appeals, relying upon *Roth,* clarified the bounds of such a constitutional right in this jurisdiction in *O'Donnell v. Barry,* 148 F.3d 1126 (D.C.Cir. 1998). While reiterating the longstanding principle that defamation alone is not sufficient to trigger a due process claim, the Court of Appeals recognized two potential bases for constitutional claims where a defamatory statement has broader impact.

The first, a "reputation-plus" claim, arises where an official defamatory statement is "accompanied by a discharge from government employment or at least a demotion in rank and pay." *Id.* at 1140 (citation omitted). The second, a stigma or disability claim, focuses upon the potential for an official defamatory statement to interfere with future employment opportunities. As the Court of Appeals explained, "[t]he Constitution protects an individual's 'right to follow a chosen trade or profession' without governmental interference. Government action that has the effect of 'seriously affect[ing], if not destroy[ing]' a plaintiff's ability to pursue his chosen profession, or 'substantially reduc[ing] the value of his human capital,' thus infringes a liberty interest." *Id.* at 1141 (citations omitted).

In the present case, Plaintiff has alleged exactly these types of violations of its due process rights. Defendants' actions, Plaintiff claims, have deprived Plaintiff of both its former contracts, which were not renewed, as well as the right to participate in a fair procurement process for purposes of winning future contracts with the District of Columbia. For purposes of ruling on a motion to dismiss, Plaintiff has met its burden.[10]

---

10. With respect to the remaining Class II Defendants who were not sued in their individual capacities, Plaintiff has failed to establish a constitutionally protected liberty.

Defendants argue, in the alternative, that they have satisfied any requirements of due process. In particular, Defendants strenuously assert that Defendant Prettyman offered to print a revised report upon submission of additional information by Plaintiff, and that Plaintiff failed to take advantage of that offer. Even though Plaintiff has provided undisputed evidence that it did in fact respond to Defendant Prettyman's offer, it is not Plaintiff's actions which are the crux of the issue. The mere offer, in and of itself, to correct allegedly false information after its publication fails to satisfy due process where it is alleged that Defendants failed to consult with Plaintiff and verify their conclusions prior to publication of the OIG Report. Such an offer, at most, serves to mitigate ongoing and future damage. It does not address the damage suffered from publication itself. In any case, it is undisputed that the OIG has not issued a revised report, even after receipt of Plaintiff's letter dated April 16, 1998, documenting errors in the Report.

Defendants further argue that D.C. statutes set forth well-established administrative and judicial procedures to challenge individual procurement decisions. While that may be the case, such an argument is entirely unresponsive to Plaintiff's allegation that its right to participate in a fair contracting process has been improperly impeded. Accordingly, Defendant's Motion to Dismiss is **denied** as to Count I.

### D. Defamation Claim[11]

■ Plaintiff further alleges in Count II that Class I Defendants engaged in defamation through the malicious preparation and publication of false statements in the OIG Report. Defendants respond that Plaintiff's defamation claim must be dis-

missed because Defendant Prettyman offered to publish a revised report upon submission by Plaintiff of supplemental information. In the alternative, Defendants claim governmental immunity.

Defendants' first defense is easily rejected. The fact that Defendant Prettyman offered to print a revised report fails to correct any damage Plaintiff may have already suffered from the initial publication of allegedly defamatory information. At best, as already noted, a revised report would limit ongoing and future damage.

In the alternative, Defendants argue that they are immune from a claim for defamation. The defense of absolute privilege for defamatory statements is closely related to, though distinct from, the qualified immunity defense discussed above.

The Supreme Court, in *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), set forth the framework for the absolute immunity defense to claims of defamation. In *Barr*, two subordinates sued the director of the District of Columbia Office of Rent Stabilization for publishing a press statement which allegedly defamed them. As part of their claim, the plaintiffs argued that their employer had acted maliciously, or spoken without reasonable grounds for believing his statements were true. The director asserted a defense of absolute immunity.

··After an extensive discussion of the balance between the ability of injured parties to recover for their losses and the need to ensure the proper and effective administration of public office, the Court settled on the principle that a government agent acting within the outer perimeter of his or her line of duty is entitled to absolute immunity for allegedly defamatory state-

---

Plaintiff has provided no authority, and the Court knows of none, which require all government contractors to independently investigate negative information included within an OIG report. Defendants' Motion is therefore **granted** as to Count I with respect to all Class II Defendants.

11. It appears from the face of the Complaint that Count II is alleged only against Class I Defendants.

ments, even if the statements are alleged to be malicious. *Id.* at 575, 79 S.Ct. 1335.

The Court further instructed that the test of whether an agent acted within the outer perimeter rests not in his or her title, but rather, "the duties with which the particular officer sought to be made to respond in damages is entrusted." *Id.* at 573, 79 S.Ct. 1335.

Our Court of Appeals has applied the *Barr* test for absolute governmental immunity in this jurisdiction as well. In *Sami v. United States*, 617 F.2d 755, 768 (D.C.Cir.1979), the Court noted that "a government employee has an *absolute* immunity for common law defamation if he acts 'within the ambit of his discretion.' " *Id.* (emphasis added). The Court of Appeals continued, "the common law doctrine of official immunity ... distinguishes between the performance of discretionary and ministerial functions and immunity is conferred only for the former." *Id.* at 768–769.

Plaintiff, in the present case, has attempted to distinguish, albeit unsuccessfully, Defendants' defense of absolute immunity.[12] There is little doubt that the Class I Defendants were acting within the outer perimeter of the duties of the OIG. The entire mission of the OIG, as prescribed by statute, is to investigate and audit contracts between the District of Columbia and private contractors. There has been no dispute that the publication of reports detailing audits is routine practice for the OIG, and within the discretionary functions of the agency. As such, the statements set forth in the OIG Report, defamatory or not, are protected by absolute immunity. Furthermore, District of Columbia courts have customarily held that where government employees acting with-

in the scope of employment are immune from liability, the city may not be held liable through the doctrine of respondeat superior. *District of Columbia v. Thompson*, 570 A.2d 277, 296 (D.C.1990), *vacated in part on other grounds*, 593 A.2d 621 (D.C.1991). Accordingly, Defendants' Motion is *granted* as to Count II, and the claim is dismissed as to all Defendants.

**E. Negligence Claim**[13]

■ Plaintiff alleges in Count III that Class I Defendants were negligent in preparing and disseminating the OIG Report without regard for the Generally Accepted Government Audit Standards ("GAGAS"). To prevail on a claim of negligence, Plaintiff must allege a duty, breach of that duty, and resultant injury.[14] Plaintiff here relies upon GAGAS to establish a legal duty. Defendants respond that Plaintiff's negligence claim must be dismissed because GAGAS do not apply to the actions of the OIG, and in any case, Plaintiff's claim is precluded by the public duty doctrine.

The OIG is a statutorily created agency which acts within statutorily prescribed bounds. Pursuant to D.C.Code § 1–1182.8(a)(3)(A), the Inspector General is charged with the duty to "[c]onduct independent fiscal and management audits of District government operations." Parties here dispute the propriety of the procedure used by OIG in conducting its audit of Plaintiff's government contracts.

The Inspector General's enabling statute is responsive to that question. The statute provides that:

> In determining the procedures to be followed and the extent of the examinations of invoices, documents, and records, the Inspector General shall *give*

---

12. Plaintiff instead spends three pages of its Opposition Brief discussing the elements of a prima facie case of defamation, which are not in dispute.

13. It appears from the face of the Complaint that Count III is alleged only against Class I Defendants.

14. Defendants challenge only the existence of a legal duty. For purposes of this Motion to Dismiss, breach and resultant injury are impliedly conceded.

*due regard* to the provisions of this chapter, as well as generally accepted accounting and procurement principles, practices, and procedures, including, but not limited to, federal and District government case law, decisions of the U.S. Comptroller General, and decisions of federal contract appeals boards. D.C.Code § 1–1182.8(b) (emphasis added).

Plaintiff, relying upon D.C.Code § 1–1182.8(b), argues that Defendants had a duty to apply generally accepted accounting and procurement principles, as set forth in GAGAS.

Plaintiff's argument is flawed, however, because the very language of D.C.Code § 1–1182.8(b) requires the OIG only to "give due regard" to generally accepted accounting and procurement principles. While GAGAS may represent standard practices in the accounting and procurement fields, Section 1–1182.8(b), by its own terms, does not mandate compliance with GAGAS. Plaintiff's effort to read a duty into such discretionary language for purposes of a negligence claim is tenuous at best.

■ Irrespective of D.C.Code § 1–1182.8(b), Defendants argue that Plaintiff's negligence claim is precluded by the public duty doctrine. That doctrine, as recognized by District of Columbia courts, holds that " 'a government and its agents are under no general duty to provide public services . . . to any particular individual citizen.' Rather, the duty owed is to the public, and absent a special relationship, the District of Columbia cannot be held liable." *Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C.1983); *Forsman v. District of Columbia,* 580 A.2d 1314, 1316–17 (D.C.1990); *Allison Gas Turbine Division v. District of Columbia,* 642 A.2d 841, 843 (D.C.1994).

■ Plaintiff may demonstrate an exception to the public duty doctrine, however, by establishing a special relationship with the District of Columbia. To do so,

Plaintiff must demonstrate either " 'direct contact or continuing contact between the victim and the governmental agency or official,' . . . or by a statute that prescribes 'mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole.' " *Forsman,* 580 A.2d at 1317. District of Columbia courts have made clear, however, that the threshold for establishing a special relationship is extremely high.

■ In a number of cases with significantly more compelling factual scenarios than the instant one, the District of Columbia courts have found no special relationship between a plaintiff and the District of Columbia government. In *Morgan v. District of Columbia,* 468 A.2d 1306 (D.C.1983), for instance, the plaintiff, wife of a Metropolitan Police Department officer, contacted the Metropolitan Police Department ("MPD") repeatedly to request protection from her husband. The plaintiff informed the MPD each time that her husband was violent, and had threatened her at gunpoint. Officers of the MPD spoke to the plaintiff's husband, but took no measure to discipline him, or to protect the plaintiff. Several months later, the plaintiff's husband kidnapped her and her children at gunpoint, choked the plaintiff into unconsciousness, and shot both plaintiff and one of her children, as well as two police officers who were onsite.

Despite the plaintiff's ongoing interaction with the MPD, however, the District of Columbia Court of Appeals concluded that no special relationship had been established sufficiently to circumvent the public duty doctrine. "A special relationship exists", the Court stated, "if the police employ an individual in aid of law enforcement, but does not exist merely because an individual requests, or a police officer promises to provide protection." *Id.* at 1315.

In *Forsman v. District of Columbia,* 580 A.2d at 1318, the District of Columbia Court of Appeals also found no special relationship which would permit plaintiffs

to skirt the rigid strictures of the public duty doctrine. There, plaintiffs sued the District of Columbia after construction on their neighbor's property caused the foundation of the plaintiffs' residence to collapse. Throughout the course of construction, a building inspector of the District of Columbia was aware that the neighbor had not obtained necessary permits, yet assured the plaintiffs that the damage caused by the neighboring construction would be repaired.

Despite the intervention of the city building inspector, the Court of Appeals nevertheless found that no special relationship existed between the plaintiffs and the District of Columbia. Rather, the Court noted, "[t]he mere fact that the inspector assisted the [plaintiffs] in getting the ... repairs done could not have justified reliance by the [plaintiffs] on Inspector Minor to protect them from any and all harm arising out of the demolition and construction project going on next door." *Id.* at 1319.

In the instant case, Plaintiff is unable to establish the type and extent of direct contact or continuing contact with the OIG mandated by District of Columbia case law. The OIG prepared and published its report without consulting Plaintiff, relying solely upon agency and outside documentation. The District of Columbia therefore owed no greater duty to Plaintiff than it did to any other member of the general populace. Furthermore, D.C.Code § 1–1182.8(b) imposes no mandatory duties upon the District of Columbia. The OIG is merely told to "give due regard" to established auditing principles. The statute also gives no indication that it was meant to protect a certain class of individuals, rather than the public as a whole.

Accordingly, Plaintiff is unable to demonstrate any special relationship which permits it to circumvent the often harsh effects of the public duty doctrine. Defendant's Motion to Dismiss is therefore *granted* with respect to Count III.

## IV. *Conclusion*

For the reasons set forth above, Defendants' Motion to Dismiss is *granted in part and denied in part* as follows:

1. Defendants Office of the Inspector General, District of Columbia Department of Health, District of Columbia Department of Human Services, and Department of Administrative Services are *non sui juris,* and are **dismissed** as to all claims; Defendants' Motion is **granted.**

2. All individually named Defendants are entitled to qualified immunity, and are **dismissed** as to **Count I** of the Complaint in their *individual* capacities; Defendants' Motion is *granted* in part.

3. As to Class I Defendants, Plaintiff has adequately stated a claim for violation of due process, and the claim survives against Class I Defendants in their *official* capacities; Defendants' Motion is **denied in part** as to **Count I.**

4. As to Class II Defendants, Plaintiff has failed to state a claim for violation of due process; Defendants' Motion is **granted in part** as to **Count I.**

5. All Defendants are entitled to absolute immunity on Plaintiff's claim of defamation, and Count II is therefore **dismissed** in its entirety; Defendants' Motion is **granted** as to **Count II.**

6. Plaintiff's negligence claim is further barred by the public duty doctrine, and Count III is therefore **dismissed** in its entirety; Defendants' Motion is **granted** as to **Count III.**

A separate order will issue with this Memorandum Opinion.

### *ORDER*

This matter comes before the Court upon Defendants' Motion to Dismiss [# 12]. Plaintiff, Trifax Corporation, brings suit against the District of Columbia, various agencies of the District of

Columbia,[1] and various District of Columbia officials in both their official and individual capacities,[2] alleging Constitutional and common law violations. Count I of Plaintiff's Complaint alleges a violation of Plaintiff's Constitutional right to due process.

Plaintiff further alleges Count II for common law defamation and Count III for common law negligence. Upon consideration of Defendants' Motion, Plaintiff's Opposition, Defendants' Reply, and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is this _____ day of June, 1999, hereby

**ORDERED,** that Defendant's Motion to Dismiss is **granted in part and denied in part** as follows:.

1. Defendants Office of the Inspector General, District of Columbia Department of Health, District of Columbia Department of Human Services, and Department of Administrative Services are *non sui juris*, and are **dismissed** as to all claims; Defendants' Motion is **granted.**

2. All individually named Defendants are entitled to qualified immunity, and are **dismissed** as to **Count I** of the Complaint in their *individual* capacities; Defendants' Motion is **granted in part.**

3. As to Class I Defendants, Plaintiff has adequately stated a claim for violation of due process, and the claim survives against Class I Defendants in their *official* capacities; Defendants' Motion is **denied in part** as to **Count I.**

1. These include the Office of the Inspector General of the District of Columbia, the District of Columbia Department of Health, the District of Columbia Department of Human Services, the District of Columbia Department of Administrative Services, and the District of Columbia Health and Hospitals Public Benefit Corporation.

2. Plaintiff brings suit against the following individuals in their official capacities: the mayor of the District of Columbia; E. Barrett Prettyman, Jr., former Inspector General for the District of Columbia; Robert Thomas,

4. As to Class II Defendants, Plaintiff has failed to state a claim for violation of due process; Defendants' Motion is **granted in part** as to **Count I.**

5. All Defendants are entitled to absolute immunity on Plaintiff's claim of defamation, and Count II is therefore **dismissed** in its entirety; Defendants' Motion is **granted** as to **Count II.**

6. Plaintiff's negligence claim is further barred by the public duty doctrine, and Count III is therefore **dismissed** in its entirety; Defendants' Motion is **granted** as to **Count III.** It is further

**ORDERED,** that parties appear for a further scheduling conference on June 29 at 9:45 am.