TRIFAX CORP., Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

No. 01–7195.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 21, 2002.

Decided Jan. 14, 2003.

Barbara E. Brown argued the cause and filed the briefs for appellant.

Edward E. Schwab, Assistant Corporation Counsel, Office of Corporation Counsel, argued the cause for appellee.  With

him on the brief was Charles L. Reischel, Deputy Corporation Counsel.

Before: SENTELLE, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In this case, a government contractor claims that the District of Columbia Inspector General, by releasing an allegedly defamatory audit report, deprived it of liberty to engage in its chosen business in violation of the Fifth Amendment's Due Process Clause. Because the contractor, though perhaps injured in some respects, cannot demonstrate broad preclusion from government contracting, as the law of this circuit requires, we affirm the district court's grant of summary judgment for the District of Columbia.

## I.

Appellant Trifax Corporation supplies health care and nursing services to District and federal agencies. In May 1997, at the request of a D.C. Councilmember, the District of Columbia Office of Inspector General (OIG) opened an inquiry into Trifax's performance of its contracts with District agencies. After auditing two of Trifax's four contracts, the OIG released a highly critical report that was later described in a *Washington Post* article. According to the OIG report, Trifax "consistently violated the requirements of the contracts," as well as the federal Service Contract Act, 41 U.S.C. § 351 *et seq.*, by both underpaying its employees and overcharging the District. *See* Review of the Department of Human Services and the District of Columbia General Hospital Contracts with the Trifax Corporation, OIG No. 9713–25 at 3 (Nov. 20, 1997). Although the report also found Trifax's misdeeds "sufficient to

justify" a three-year debarment from bidding on District contracts, it recommended that the District defer formal action pending completion of a parallel investigation by the U.S. Department of Labor. *Id.* at 11.

For purposes of this case, the only important fact about the OIG's audit is that the OIG never offered Trifax an opportunity to comment on the unfavorable report before making it public. After the report's release, Trifax wrote two letters to the OIG calling the report factually inaccurate and requesting its withdrawal. Based on "additional information" from Trifax, the OIG released a revised report reaffirming that Trifax underpaid employees and overcharged the District, but lowering the estimate of total financial irregularities from $43,288, as found in the initial report, to $28,104. *See* Review of the Department of Human Services and the District of Columbia General Hospital Contracts with a Selected Vendor, No. OIG–9713–25 (Revised), OIG–00–2–02MA at 1–2 (Sept. 15, 2000). Unlike the initial report, the revised report did not recommend formal debarment.

Trifax brought suit in the United States District Court for the District of Columbia against the District of Columbia, various agencies, and various District officials in both their official and individual capacities alleging (1) deprivation of due process under 42 U.S.C. § 1983 and (2) defamation and negligence under D.C. law. Acting pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed the negligence and defamation counts, citing public duty and absolute immunity doctrine, as well as the constitutional claim as to D.C. officials sued in their individual capacities, citing qualified immunity doctrine. *Trifax Corp. v. Dist. of Columbia,* 53 F.Supp.2d 20, 24–26, 28–31 (D.D.C. 1999) ("*Trifax I*"). The district court later

granted summary judgment for the District of Columbia on the constitutional claim, finding Trifax unable to prove that District officials had deprived it of a liberty interest. *Trifax Corp. v. Dist. of Columbia,* No.98–2824, mem. op. at 8–19 (D.D.C. Nov. 2, 2001) (*"Trifax II"*).

Trifax appeals. Bearing in mind that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), and that "summary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), we review the district court's decisions de novo, *see Weyrich v. New Republic, Inc.,* 235 F.3d 617, 623 (D.C.Cir. 2001) (dismissal for failure to state a claim reviewed de novo); *Troy Corp. v. Browner,* 120 F.3d 277, 281 (D.C.Cir.1997) (grant of summary judgment reviewed de novo).

## II.

We begin our analysis of the constitutional claim with two due process principles that fit together somewhat uneasily in the circumstances of this case. First, a person's "right to ... follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' ... concept[ ] of the Fifth Amendment." *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *see also Kartseva v. Dep't of State,* 37 F.3d 1524, 1529 (D.C.Cir. 1994) (acknowledging a "constitutionally protected 'right to follow a chosen trade or profession' " (quoting *Cafeteria & Restaurant Workers Local 473 v. McElroy,* 367 U.S. 886, 895–96, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961))). Because this "liberty concept" protects corporations as well as individuals, formally debarring a corporation from government contract bidding constitutes a deprivation of liberty that triggers the procedural guarantees of the Due Process Clause. *Old Dominion Dairy Prods., Inc. v. Sec'y of Defense,* 631 F.2d 953, 961–62 (D.C.Cir.1980). Second, persons whose future employment prospects have been impaired by government defamation "lack ... any constitutional protection for the interest in reputation." *Siegert v. Gilley,* 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). This principle derives from *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which held that police distribution of a flyer labeling the plaintiff an "Active Shoplifter[ ]," though "seriously impair[ing] his future employment opportunities," infringed no liberty interest because it harmed only the plaintiff's reputation. *Id.* at 697, 711–12, 96 S.Ct. at 1159, 1165–66. Reiterating this principle in *Siegert v. Gilley,* the Supreme Court held that a plaintiff whose former government employer sent an admittedly libelous letter of reference that "would undoubtedly ... impair his future employment prospects" stated no constitutional violation "so long as such damage flows from injury caused by the defendant to a plaintiff's reputation." 500 U.S. at 234, 111 S.Ct. at 1794.

The case before us reveals the tension between these two lines of due process cases. Had the District formally debarred Trifax from bidding on government contracts, that would have unquestionably constituted a deprivation of liberty. Conceding that it was not formally debarred, however, Trifax claims to have suffered "broad preclusion" from government contracting. Appellant's Rep. Br. at 8–11. In view of the fact that formal debarment would constitute a deprivation of liberty, it

would be odd if broad preclusion, equivalent in every practical sense to formal debarment, did not also constitute a deprivation simply because the harm was reputational. For exactly this reason, and notwithstanding the strong language in *Paul v. Davis* and *Siegert v. Gilley*, we have held on several occasions that government stigmatization that broadly precludes individuals or corporations from a chosen trade or business deprives them of liberty in violation of the Due Process Clause.

For example, in *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, a government contractor unfavorably audited by the government, though not formally debarred, was "effectively put ... out of business." 631 F.2d at 963. We held that "when the Government effectively bars a contractor from virtually all Government work due to charges that the contractor lacks honesty or integrity, due process requires that the contractor be given notice of those charges as soon as possible and some opportunity to respond to the charges before adverse action is taken." *Id.* at 955–56. We reached a similar result in *Kartseva v. Department of State*, where a government contractor fired a Russian translator after the State Department informed the contractor that employing the translator raised " 'counterintelligence concerns.' " 37 F.3d at 1525 (internal citation omitted). We held that a liberty interest was implicated if the State Department's action (1) "formally or automatically excludes Kartseva from work," or (2) "does not have this *binding* effect, but nevertheless has the *broad* effect of largely precluding Kartseva from pursuing her chosen career as a Russian translator." *Id.* at 1528 (emphases in original). In still another due process employment case, *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497 (D.C.Cir.1995), we relied on *Kartseva* for the proposition that "government action precluding a litigant from future employ-

ment opportunities will infringe upon his constitutionally protected liberty interests ... when that preclusion is either sufficiently formal or sufficiently broad." *Id.* at 1505.

These employment and government contracting due process cases establish what we call a "reputation plus" requirement—plaintiffs must show not only that the government harmed their reputation, but also that the resulting stigma "altered [their] status in a tangible way." *Orange v. Dist. of Columbia*, 59 F.3d 1267, 1274 (D.C.Cir. 1995) (internal quotation marks and citations omitted) (alteration in original). This "change in status requirement," *id.* (internal quotation marks omitted), explains why *Paul v. Davis* and *Siegert v. Gilley* have no applicability to the claims here: Both cases involve harms analogous to common-law defamation, while the "reputation plus" cases involve harms approaching, in terms of practical effect, formal exclusion from a chosen trade or profession, as in *Old Dominion*. The key inquiry then is this: Has the government, by attacking personal or corporate reputation, achieved in substance an alteration of status that, if accomplished through formal means, would constitute a deprivation of liberty? For this reason, plaintiffs claiming "broad preclusion" must show that "the government 'has seriously affected, if not destroyed, [their] ability to obtain employment [or contracts] in [their] field.' " *Taylor*, 56 F.3d at 1506 (quoting *Greene v. McElroy*, 360 U.S. at 492, 79 S.Ct. at 1411).

■ Turning to the facts of this case, we agree with the district court that Trifax failed to show anything remotely close to "broad preclusion." As the district court found, the record demonstrates that Trifax " 'won some and lost some' in retaining and bidding on government contracts after the original OIG Report was released."

*Trifax II*, No. 98–2824 mem. op. at 14. To be sure, in the year following the release of the OIG report, the District declined to renew at least two contracts with Trifax. Later that same year, however, the District of Columbia General Hospital—the contracting agency in one of the two OIG-audited contracts—actually awarded Trifax a new contract. *Id.*; *cf. Advanced Mgmt. Tech., Inc. v. Fed. Aviation Admin.*, 211 F.3d 633, 636 (D.C.Cir.2000) (holding that the " 'all is forgiven' message implicit" in the present award of a government contract "suggests the improbability of … a [reputational] shadow" arising from past criticism by the same agency). It is also true that Trifax later failed to win two federal contracts, but the district court concluded, correctly we believe, that neither of these unfavorable results is traceable to the OIG report. *Trifax II*, No. 98–2824 mem. op. at 16–17. Indeed, in one of the bid processes, the United States Comptroller General formally prohibited the contracting agency from penalizing Trifax for the OIG report; in the other, a District of Columbia agency sent a recommendation letter calling Trifax "a reliable, competent … company" and noting "no complaints or contract deficiencies" in Trifax's file. *Id.* at 16, 17 & n. 9.

In sum, because these facts are more than sufficient to preclude a reasonable jury from finding Trifax broadly precluded from government contracting, we affirm the district court's grant of summary judgment for the District. We thus have no need to address Trifax's claim that the authors of the OIG report enjoy no qualified immunity from constitutional torts committed in their individual capacities.

## III.

Trifax's challenge to the district court's dismissal of its defamation and negligence claims requires little discussion. As the district court's fine opinion explains, the defamation claim fails because the government officials acted " 'within the ambit of [their] discretion' " when they prepared the OIG report and are thus entitled to " '*absolute* immunity for common law defamation.' " *Trifax I*, 53 F.Supp.2d at 29 (quoting *Sami v. United States*, 617 F.2d 755, 768 (D.C.Cir.1979) (emphasis added) (internal quotation marks omitted)). The negligence claim fails, again as the district court's opinion demonstrates, because District officials had no "special relationship" with Trifax that would preclude application of the public duty doctrine. *Trifax I*, 53 F.Supp.2d at 31; *see also Powell v. Dist. of Columbia*, 602 A.2d 1123, 1129–30 (D.C. 1992).

## IV.

Because Trifax fails either to demonstrate broad preclusion from government contracting or to plead state law defamation or negligence claims, we affirm in all respects.

*So ordered.*